of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

September 14, 2020

**2020 CO 73**

**No. 18SC760, Barrett Corp. v. Lembke — Statutory Interpretation — Special Districts — Land Use.**

In this opinion, the supreme court determines the proper interpretation of section 32-1-401(1)(a), C.R.S. (2019), of the Special District Act. The supreme court holds that to include new territory in a special district through the procedure set out in the statute, all owners of the surface property to be included must assent, and inclusion is only appropriate if that surface property can be served by the district. The assent of the owners or lessees of subsurface mineral rights is not required. Accordingly, the supreme court affirms the decision of the division below and remands the case for consideration of any outstanding questions.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 73

### Supreme Court Case No. 18SC760
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1616

### Petitioners:

Bill Barrett Corporation; Bonanza Creek Energy, Inc.; and Noble Energy, Inc.,

v.

### Respondents:

Robert Lembke, 70 Ranch LLC, South Beebe Draw Metropolitan District f/k/a Bromley Park Metropolitan District No. 1, and United Water and Sanitation District.

### Judgment Affirmed
*en banc*
September 14, 2020

**Attorneys for Petitioners Bill Barrett Corporation and Bonanza Creek Energy, Inc.:**
Davis Graham & Stubbs LLP
R. Kirk Mueller
Emily Wasserman
  *Denver, Colorado*

**Attorneys for Petitioner Noble Energy, Inc.:**
Hogan Lovells US LLP
Elizabeth H. Titus
  *Denver, Colorado*

**Attorneys for Respondents Robert Lembke and 70 Ranch LLC:**
Hamre, Rodriguez, Ostrander & Dingess, P.C.
Donald M. Ostrander
Richard F. Rodriguez
Paul C. Rufien
Joel M. Spector
*Denver, Colorado*

**Attorneys for Respondent South Beebe Draw Metropolitan District:**
Brown Dunning Walker PC
Douglas W. Brown
David C. Walker
Drew P. Fein
*Denver, Colorado*

**Attorneys for Respondent United Water and Sanitation District:**
Hamre, Rodriguez, Ostrander & Dingess, P.C.
Donald M. Ostrander
Richard F. Rodriguez
Paul C. Rufien
Joel M. Spector
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Alliance of Mineral and Royalty Owners:**
Visani Bargell LLC
Cynthia L. Bargell
*Dillon, Colorado*

**Attorneys for Amicus Curiae Special District Association of Colorado:**
Butler Snow LLP
Martina Hinojosa
Dee Wisor
*Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.

¶1 In 2015, the owners of a 13,000-acre tract of land known as 70 Ranch successfully petitioned to include their tract in a special district. After 70 Ranch was incorporated into the district, the district began taxing the leaseholders of subsurface mineral rights—Bill Barrett Corporation, Bonanza Creek Energy, Inc., and Noble Energy, Inc. (collectively "Lessees")—for the oil and gas they produced at wellheads located on 70 Ranch. Lessees, however, objected to being taxed. They argued that the mineral interests they leased could not be included in the special district because neither they nor the owners of the mineral estates consented to inclusion, which they asserted was required by section 32-1-401(1)(a), C.R.S. (2019), of the Special District Act.

¶2 We granted certiorari to review two questions concerning the statutory construction of section 32-1-401(1)(a),[1] but our answer to one obviates the need to answer the other. We therefore consider only whether subsection 401(1)(a)

[1] We granted certiorari to review the following issues:

1. Whether the court of appeals erred in concluding that, for purposes of section 32-l-401(1)(a), C.R.S. (2019), only an owner, and not a lessee, of a severed mineral estate qualifies as a "fee owner."

2. Whether section 32-l-401(1)(a), C.R.S. (2019), permits the inclusion of real property into a special taxing district, when (1) the inclusion occurred without notice to or consent by the property's owners and (2) that property is not capable of being served by the district.

3

permits the inclusion of real property covered by the statute into a special taxing district when (1) the inclusion occurred without notice to or consent by the property's owners and (2) that property is not capable of being served by the district.

¶3 The answer to this question is "no," but that does not save Lessees here. Section 32-1-401 sets out the processes for "[i]nclusion of territory" within the boundaries of a special district—i.e., an expansion of the surface area of the district. Therefore, section 32-1-401(1)(a) requires the assent of all of the *surface property* owners to an inclusion under that provision, and inclusion is only appropriate if the *surface property* can be served by the district. Section 32-1-401(1)(a) does not require assent from owners of subsurface mineral estates because those mineral estates, while they are real property, are not territory. Thus, Lessees' consent was not required for the inclusion of 70 Ranch in the special district. We therefore affirm the holding of the court of appeals, albeit on other grounds.

## I. Facts and Procedural History

¶4 Robert Lembke and 70 Ranch LLC collectively own the entirety of the 13,000-acre tract of land known as 70 Ranch, which is located in unincorporated Weld County. The subsurface mineral estates underlying 70 Ranch have been severed from the surface estate and are owned in part by 70 Ranch LLC and in part

4

by various nonparties to this case. These mineral interests are leased by Lessees, who produce oil and gas at wellheads located on 70 Ranch.

¶5    In 2015, Lembke and 70 Ranch LLC petitioned to include 70 Ranch within the boundaries of South Beebe Draw Metropolitan District ("South Beebe"), a special district that provides sanitation, sewer, water, and storm drainage infrastructure in Adams and Weld counties. As required by section 32-1-401(1)(b), Lembke and 70 Ranch LLC published notice of the inclusion petition and information about the public hearing on inclusion in a local newspaper. The published notice included a legal description of the property; the place, time, and date of the public hearing; the names and addresses of the petitioners; and notice that anyone who opposed the inclusion of the territory into the special district should appear at the hearing and should show cause in writing why the petition should not be granted. *See* § 32-1-401(1)(b) (setting out the notice requirements for this process).

¶6    In April 2015, after the public hearing, South Beebe approved the inclusion petition. Thereafter, South Beebe began imposing ad valorem taxes on Lessees' oil and gas production pursuant to section 32-1-1101(1)(a), C.R.S. (2019). *See* § 32-1-1101(1)(a) (giving special districts authority to impose ad valorem taxes on all taxable property located within the district).

5

¶7 Lessees sued, and the district court issued a temporary restraining order enjoining disbursement of taxes already collected by South Beebe and collection of any further taxes.

¶8 Lessees then moved for a preliminary injunction. They argued, as relevant here, that (1) lessees of mineral estates should be considered fee owners of those real property interests, and (2) section 32-1-401(1)(a) requires the assent of "the fee owner or owners of one hundred percent of any real property" to be included in a special district. Because neither the owners of the severed mineral interests nor Lessees had given their assent to inclusion within South Beebe, and because mineral rights are "real property," Lessees asserted that the inclusion of 70 Ranch did not comply with the Special District Act. The district court rejected this argument, concluding that only surface estate fee owners are statutorily required to consent to inclusion under this provision of the Act because "a severed mineral estate is not real property 'capable of being served with facilities of the special district'" and section 32-1-401(1)(a) only requires consent from owners of property that can be served by the district. Order Den. Mot. Prelim. Inj., 17. The court entered final judgment pursuant to C.R.C.P. 54(b) and 56(h) with regard to this holding so that this question of statutory interpretation could be resolved on appeal.

¶9    A division of the court of appeals affirmed in relevant part. *Barrett Corp. v.*

*Lembke*, 2018 COA 134, ¶¶ 49, 125, __ P.3d __.  Like the trial court, the division

concluded that the owners of the severed mineral estate underlying 70 Ranch did

not have to consent to its inclusion in South Beebe because "a mineral estate . . . is

not 'real property capable of being served with facilities of the special district.'"

*Id.* at ¶ 47.[2]

¶10   Lessees petitioned this court for certiorari, and we granted the petition in

order to determine the proper construction of section 32-1-401(1)(a).[3]

## II.  Analysis

¶11   After setting forth the standard of review, we turn to the Special District Act,

sections 32-1-101 to -1807, C.R.S. (2019).  Specifically, we look to subsection

401(1)(a) within the context of Part 4 of the Act to determine whether Lessees were

---

[2] Separately, the division held that Lessees had established a reasonable likelihood of success regarding their claim that South Beebe did not obtain proper approval from the Adams County Board of Commissioners before materially changing its service plan, and it vacated and remanded to the district court to make further findings. *Id.* at ¶¶ 90, 125–26.  This issue, however, is not before us.

[3] We decline to address the constitutional claims Lessees raise in their briefs, especially in light of the fact that we denied Lessees' petition for certiorari review as to their due process claim.  Also, as the division noted, Lessees did not preserve these constitutional issues below.  *Id.* at ¶ 43.

required to assent to the inclusion of 70 Ranch in South Beebe. We conclude that the statute does not require their assent.

¶12 The interpretive question before us is straightforward. By its plain language, section 32-1-401 addresses the "[i]nclusion of territory" encompassed by a special district. Thus, the assent subsection 401(1)(a) requires is the assent of all owners of surface property whose inclusion would expand the boundaries of a special district, and inclusion is only appropriate if the surface property can be served by the district. Accordingly, we agree with the district court's entry of summary judgment and affirm the decision of the court of appeals, though on different grounds.

## A. Applicable Law

### 1. Standard of Review

¶13 We review de novo a district court's order deciding a question of law pursuant to Rule 56(h). *Coffman v. Williamson*, 2015 CO 35, ¶ 12, 348 P.3d 929, 934. "The summary judgment standard applies: an order is proper under Rule 56(h) 'if there is no genuine issue of any material fact necessary for the determination of the question of law.'" *Id.* (quoting C.R.C.P. 56(h)); *cf. People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 19, 465 P.3d 554, 559 (noting that summary judgment is proper under C.R.C.P. 56(c) when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law").

¶14 Questions of statutory interpretation are also subject to de novo review. *Meagher*, ¶ 22, 465 P.3d at 559. Our primary goal when interpreting a statute is "to effectuate the legislature's intent." *Blooming Terrace No. 1, LLC v. KH Blake St., LLC*, 2019 CO 58, ¶ 11, 444 P.3d 749, 752. To accomplish this "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *Id*; *see also McCulley v. People*, 2020 CO 40, ¶ 10, 463 P.3d 254, 257 ("We must interpret the statute as a whole and in the context of the entire statutory scheme . . . ."). "If the statutory language is clear and unambiguous, we apply it as written—venturing no further." *Blooming Terrace No. 1, LLC*, ¶ 11, 444 P.3d at 752.

## 2. The Special District Act

¶15 In enacting the Special District Act, the General Assembly intended that special districts would "serve a public use" and "promote the health, safety, prosperity, security, and general welfare of the inhabitants of such districts and of the people of the state of Colorado." § 32-1-102(1), C.R.S. (2019). Moreover, the legislature provided that, because the Act is "necessary to secure the public health, safety, convenience, and welfare, [it] shall be liberally construed to effect its purposes." § 32-1-113, C.R.S. (2019); *see also SDI, Inc. v. Pivotal Parker Commercial, LLC*, 2014 CO 80, ¶ 16, 339 P.3d 672, 676.

¶16    The plain language of Part 4 of the Special District Act demonstrates that it concerns the expansion of the surface area of a special district. At the outset, Part 4 is titled "Inclusion of Territory," and section 32-1-401 is also titled "Inclusion of territory—procedure." These titles alone make it clear that the General Assembly enacted Part 4 of the Special District Act to create procedures for inclusion of *territory* in a special district. *Cf. In re Black Forest Fire/Rescue Prot. Dist.*, 85 P.3d 591, 593 (Colo. 2003) ("Section 32-1-501, et seq., C.R.S. 2002, sets forth the provisions for exclusion of territory from a special district.").

¶17    In addition to these titles, subsection 401(1)(a)—the subsection at the heart of this dispute—references the "boundaries of a special district" and analogizes the inclusion petition to a "conveyance of land":

> The *boundaries* of a special district may be altered by the inclusion of additional real property by the fee owner or owners of one hundred percent of any real property capable of being served with facilities of the special district filing with the board a petition in writing requesting that such property be included in the special district. The petition shall set forth a legal description of the property, shall state that assent to the inclusion of such property in the special district is given by the fee owner or owners thereof, and shall be acknowledged by the fee owner or owners in the same manner as required for *conveyance of land*.

§ 32-1-401(1)(a) (emphases added).

¶18    Similarly, subsection 401(1)(b), which sets out the notice and public hearing requirements for including new territory within a special district, explains that the failure of any other municipality or county to file an objection to the petition for

10

inclusion "shall be taken as an assent to the inclusion of the *area* described in the notice." § 32-1-401(1)(b) (emphasis added).

¶19 Subsection 401(2), which provides alternative methods for inclusion of new territory in a special district, also repeatedly uses the terms "boundaries" and "area." For example, one method by which "the *boundaries* of a special district may be altered" pursuant to subsection 401(2) requires a certain number "of the taxpaying electors of an *area* which contains twenty-five thousand or more *square feet of land* [to file] a petition with the board in writing requesting that such *area* be included within the special district." § 32-1-401(2)(a)(I) (emphases added). Another provides that the board of a special district may adopt a resolution to include the "specifically described *area*; but no *single tract or parcel of property constituting more than fifty percent of the total area to be included* may be included in any special district without the consent of the owner thereof." § 32-1-401(2)(a)(II) (emphases added).

¶20 The use of these terms—territory, area, boundaries, tract, parcel, and square feet—demonstrates that section 32-1-401 sets forth procedures for expanding the surface area of a special district. Black's Law Dictionary (11th ed. 2019) defines territory as "[a] *geographical area* included within a particular government's jurisdiction; the portion of the *earth's surface* that is in a state's exclusive possession and control." (Emphases added.) Merriam-Webster Dictionary similarly defines

11

territory as "a *geographic area* belonging to or under the jurisdiction of a governmental authority." https://www.merriam-webster.com/dictionary/territory; [https://perma.cc/9RTE-8WHU] (emphasis added). And it defines area as "the *surface* included within a set of lines" and "a particular extent of space or *surface* or one serving a special function: such as . . . a geographic region." https://www.merriam-webster.com/dictionary/area; [https://perma.cc/S372-WHNQ] (emphases added). The language of Part 4 of the Special District Act could not be more plain—it establishes mechanisms for the expansion of the surface territory included within and served by a special district. The assent required in subsection 401(1)(a) is therefore the assent of all owners of surface property whose inclusion will expand the boundaries of the district.

¶21 The courts below reached the same conclusion. However, in construing section 32-1-401(1)(a), they focused on the meaning of the phrase "real property capable of being served" in section 32-1-401(1)(a) and concluded that the reason the consent of the owners (or lessees) of the mineral estates was not required was that the mineral estates could not be "served" by the special district. In doing so, both courts below—as well as the parties—lost sight of the language and purpose of Part 4 of the Special District Act. Of course, it is also true that the surface property is generally the property that can be served by the facilities of a special district. *See Schlarb v. N. Suburban Sanitation Dist.*, 357 P.2d 647, 648 (Colo. 1960)

12

(noting that the purpose of special districts is to benefit the landowners within a district). But, even if the subsurface estates could in some way be served by the districts, they are not the "real property" contemplated by the procedural mechanism that the Special District Act creates for "inclusion of territory" within a special district.

¶22 After a special district's boundaries are expanded in conformity with section 32-1-401, the Special District Act provides that "all taxable property" within those boundaries is subject to ad valorem taxation by the district. § 32-1-1101(1)(a). Section 32-1-1101(1)(a) gives special districts the power "[t]o levy and collect ad valorem taxes on and against all taxable property within the special district." This includes oil and gas leaseholds if the wellheads are located within the special district's boundaries. *See Kinder Morgan CO$_2$ Co. v. Montezuma Cty. Bd. of Comm'rs*, 2017 CO 72, ¶ 4, 396 P.3d 657, 660 (citing § 39-7-102, C.R.S. (2019); Colo. Const. art. X, § 3(1)(b)) ("Oil and gas leaseholds are subject to taxation as real property."); *see also* § 39-7-101(1), C.R.S. (2019) ("[I]rrespective of the physical location of the producing leaseholds or lands, the point of taxation is the same as the point of valuation, which is the wellhead."). And, of course, it is this aspect of the Special District Act to which Lessees most object, but this section of the Act has not been challenged here and we therefore do not opine on it.

¶23    Lessees and amicus curiae, the Colorado Alliance of Mineral and Royalty Owners ("CAMRO"), suggest that our construction of the statute allows for surface estate owners to include subsurface mineral property in a special district and for the district to tax that property without any notice to the subsurface mineral owners or leaseholders and without giving them an opportunity to object. We decline to address Lessees' due process argument as it is not properly before us. But we also note that subsection 401(1)(b) *does* set out notice and public hearing requirements for expanding a special district by the consent of the surface property owners. It requires "publication of notice of the filing of such petition, the place, time, and date of [the public board] meeting, the names and addresses of the petitioners, and notice that all persons interested shall appear at such time and place and show cause in writing why the petition should not be granted." § 32-1-401(1)(b). Thus, owners of subsurface mineral estates whose wellheads are located on a surface estate will receive notice in the form of a newspaper publication and will be given an opportunity to object to the expansion of the boundaries of a special district when the surface estate owners petition for inclusion in a special district.

## B. Application

¶24    Here, Lembke and 70 Ranch LLC's inclusion petition satisfied the requirements of section 32-1-401. All of the surface estate owners of 70 Ranch

14

petitioned for inclusion within South Beebe, and the surface property of 70 Ranch could be served by the district. The surface estate owners properly published notice of the inclusion petition and public hearing in a local newspaper, following the notice process as required by section 32-1-401(1)(b). Neither the consent of the owners nor that of the lessees of subsurface mineral rights was required for inclusion of 70 Ranch within the South Beebe special district. Accordingly, the district court properly entered summary judgment against Lessees as to their section 32-1-401(1)(a) claim, and the division properly affirmed the order.

¶25 Despite the plain language of the statute, it is apparent from arguments made by Lessees and CAMRO that the oil and gas industry does not like the fact that the Special District Act subjects them to taxation by special districts without their consent to inclusion within those districts. On rebuttal at oral argument, Lessees conceded that the statute has been interpreted as we read it today for decades. But they asserted that, because of the number of special districts in Colorado and the booming oil and gas industry, the Act should now be interpreted differently. Similarly, in its amicus brief, CAMRO emphasized the "phenomenal growth" of special districts in Colorado and their reliance on oil and gas tax revenue as a reason to revise longstanding interpretation of the Special District Act. CAMRO Br. 15–17. These policy concerns, however, are better directed to

15

the General Assembly than to this court. We are not free to ignore the plain language of the statute as written.

## III. Conclusion

¶26 To include new territory in a special district through the procedure set out in section 32-1-401(1)(a), all of the owners of the surface property to be included must assent, and inclusion is only appropriate if that surface property can be served by the district. The assent of the owners or lessees of subsurface mineral estates underlying that property is not required. We therefore affirm the decision of the court of appeals and remand the case for consideration of any outstanding questions.

**JUSTICE GABRIEL** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.

JUSTICE GABRIEL, dissenting.

¶27 The majority concludes that under section 32-1-401(1)(a), C.R.S. (2019), the consent of petitioners Bill Barrett Corporation, Bonanza Creek Energy, Inc., and Noble Energy, Inc. ("Lessees") was not required for the inclusion of a property known as 70 Ranch in the South Beebe Draw Metropolitan District (the "District"). Maj. op. ¶ 3. In reaching this conclusion, the majority purports to be answering the second question on which we granted certiorari, but in my view, the majority misinterprets that question. The question does not ask us to decide whether the *surface owner's* real property may be joined into a special district without notice to and the consent of those with interests in subsurface severed mineral estates. No one contests that point. The question asks us to consider whether the *subsurface estates* may be joined into a special taxing district without notice and consent (i.e., the reference to "real property" in the second question on which we granted certiorari is to the subsurface interests, not the surface interests). The majority, however, does not answer this question. Rather, answering a question of its own derivation, it concludes that the owners of 70 Ranch could, by joining their own surface interests into the District, effectively join the interests of the owners of the severed mineral interests, thereby subjecting those interests to taxation by the District.

1

¶28 Because the party presentation principle requires us to address the issues that the parties have presented to us and not one of our own derivation, I would answer only the questions on which we granted certiorari, reverse the judgment of the division below, and save the issue that the majority chooses to address for a case in which it is properly presented.

¶29 Accordingly, I respectfully dissent.

## I. Analysis

¶30 I agree with the majority's recitation of the factual and procedural background of this case, and I need not repeat that background information here. I thus begin by discussing the party presentation principle on which my view of this case is premised. Next, I address the standard of review and the principles of statutory construction that apply here. I then turn to the first issue on which we granted certiorari, and I conclude that the division correctly determined that a lessee of a severed mineral interest is not a "fee owner" within the meaning of section 32-1-401(1)(a). Last, I address the second issue on which we granted certiorari, and I conclude that the division erroneously construed section 32-1-401(1)(a) to permit a fee owner to join into a special taxing district, without notice or consent, the interests of either a non-fee owner or of certain other property owners whose property interests are not capable of being served by the facilities of a special district merely by filing a petition.

2

## A. The Party Presentation Principle

¶31 In our adversarial system of justice, we follow the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to the courts the role of neutral arbiter of the matters that the parties present. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020); *Lucero v. People*, 2017 CO 49, ¶ 26, 394 P.3d 1128, 1134. This principle reflects the fact that "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). Thus, in deciding a case, courts should not look for wrongs to right but should decide only the questions presented by the parties. *Sineneng-Smith*, 140 S. Ct. at 1579.

¶32 Here, we granted certiorari on two precise legal questions that, although reframed, fairly captured the issues as Lessees had articulated them in their petition for a writ of certiorari. Moreover, I believe that these issues were well tailored to address two issues of statutory construction that the division below addressed as matters of first impression and in a published opinion.

¶33 Notwithstanding the foregoing, the majority does not address either of these questions. Instead, it apparently asks and answers its own question, namely,

3

whether section 32-1-401(1)(a) permits the inclusion of a surface owner's real property into a special taxing district without notice to or consent of owners of subsurface severed mineral interests, such that when the interest of the surface owner is included in a special district, the subsurface severed mineral estate is likewise included in the district and subject to taxation. This, however, is not an issue on which the division below opined, and, in my view, the parties were not given a full and fair opportunity to brief this question.

¶34 Accordingly, I do not believe that the issue on which the majority rules today is properly before us, nor do I believe that it affords us a basis on which to affirm the judgment below. Rather, I would address only the issues on which we granted certiorari. I turn to those issues next, beginning with the pertinent standard of review and principles of statutory construction.

### B. Standard of Review and Principles of Statutory Construction

¶35 We review questions of statutory interpretation de novo. *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016. In construing a statute, our goal is to effectuate the legislature's intent. *Id.* In seeking to do so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. We must avoid constructions that would render

4

any words or phrases superfluous or that would lead to illogical or absurd results. *Agilent Techs., Inc.*, ¶ 16, 441 P.3d at 1016. In addition, we must respect the legislature's choice of language, and we will not add words to a statute or subtract words from it. *Id.*

¶36 If the statutory language is clear, then we apply it as written and need not resort to other rules of statutory construction. *Id.* If, however, the statutory language is ambiguous, then we may examine the legislative intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to discern the proper construction of that statute. *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19, 433 P.3d 22, 28. A statute is ambiguous when it is reasonably susceptible of multiple interpretations. *Id.*

### C. "Fee Owner" Under Section 32-1-401(1)(a)

¶37 Lessees contend that the division below erred in concluding that a mineral lessee is not a fee owner for purposes of section 32-1-401(1)(a). I disagree.

¶38 Section 32-1-401(1)(a) provides:

> The boundaries of a special district may be altered by the inclusion of additional real property by the fee owner or owners of one hundred percent of any real property capable of being served with facilities of the special district filing with the board a petition in writing requesting that such property be included in the special district. The petition shall set forth a legal description of the property, shall state that assent to the inclusion of such property in the special district is given by the fee owner or owners thereof, and shall be acknowledged

5

by the fee owner or owners in the same manner as required for conveyance of land.

¶39 Lessees assert that the phrase "fee owner" in the first sentence of this statute refers to any owner of a fee interest in property, including owners of interests in fee simple determinable, which Lessees maintain describes their interests. A fee simple determinable is typically defined as "[a]n estate that will automatically end and revert to the grantor if some specified event occurs[.]" *Fee Simple Determinable*, Black's Law Dictionary (11th ed. 2019). And, as Lessees assert, although we have not opined on the issue, a number of other courts have concluded that an oil and gas lease conveys such an interest. *See, e.g., Somont Oil Co. v. A & G Drilling, Inc., 49 P.3d 598, 604 (Mont. 2002)* ("[O]il and gas leases transfer to the lessee a fee simple determinable estate with the lessor retaining a possibility of reverter."); *Maralex Res., Inc. v. Gilbreath*, 76 P.3d 626, 630 (N.M. 2003) ("The typical oil and gas lease grants the lessee a fee simple determinable interest in the subsurface minerals within a designated area."); *Anadarko Petrol. Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002) ("A Texas mineral lease grants a fee simple determinable to the lessee.").

¶40 Respondents Robert Lembke, 70 Ranch LLC, the District, and United Water and Sanitation District, in contrast, contend that by using the phrase "fee owner," the legislature intended to cover only those owners who hold a fee simple

6

absolute, or "[a]n estate of indefinite or potentially infinite duration." *Fee Simple Absolute*, Black's Law Dictionary (11th ed. 2019).

¶41 In my view, the phrase "fee owner" is reasonably susceptible of both of these interpretations. Accordingly, I believe that the phrase is ambiguous, and thus I turn to other tools of construction. *Colo. Oil & Gas Conservation Comm'n*, ¶ 19, 433 P.3d at 28. Doing so persuades me that for purposes here, "fee owner" does not subsume lessees of severed mineral interests. I reach this conclusion for two reasons.

¶42 First, like the division below, *see Bill Barrett Corp. v. Lembke*, 2018 COA 134, ¶¶ 33–38, __ P.3d __, I agree that the rationale in *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522 (Colo. 1982), applies here. In *Coquina Oil*, 643 P.2d at 520–23, we considered whether two federal oil and gas lessees could assert the power to condemn private property for private use (there, a private way of necessity) under article II, section 14 of the Colorado Constitution and under section 38-1-102(3), C.R.S. (2019). We concluded that the lessees could not do so because, among other things, giving the lessees such condemnation powers "creates the possibility that the [property owner whose land was to be condemned for purposes of the private right-of-way] will be subjected repeatedly to the disruptive effect and expense of litigation as successive lessees attempt to secure a temporary right-of-way." *Coquina Oil*, 643 P.2d at 522. Condemnation of a

7

right-of-way by a fee owner of a landlocked estate, in contrast, "does not create the same potential for a multiplicity of lawsuits. If the fee owner condemns the right-of-way, the taking is permanent and the appropriate compensation for the interests condemned is established in one proceeding." *Id.*

¶43 Here, as in *Coquina Oil*, because Lessees' interest is not necessarily of unlimited duration, treating a lessee as a fee owner for purposes of section 32-1-401(1)(a) could result in a succession of mineral lessees petitioning to be included in a special district, thereby creating potential instability and uncertainty in the organization and administration of that district. Absent an express indication of such an intent, I am unwilling to presume that this is what the legislature intended.

¶44 Second, I am persuaded by the position taken at oral argument by counsel for Lembke and 70 Ranch LLC that if the phrase "fee owner," as that phrase is used in section 32-1-401(1)(a), is deemed to include lessees of severed mineral estates holding fee simple determinable interests, then deciding whether such owners are "fee owners" within the meaning of the statute could require a lengthy series of steps. For example, one might be required to pull the title (assuming the lease at issue is even recorded), review the lease to decide whether it intended to grant a fee simple determinable interest (as opposed to a mere leasehold), see whether the lease contains a reverter provision, interpret that provision, and, possibly, confer

8

with the lessor and lessee to decide whether the reverter provision has been triggered. Given that section 32-1-401(1)(a) appears to reflect a legislative goal of establishing a simple and expeditious process for certain property owners to include their properties in a special district, I am unwilling, without a clearer indication of legislative intent, to presume that the legislature intended the complex process that Lessees' position could necessitate. *Cf.* §§ 32-1-102(2), (4), C.R.S. (2019) (providing that the procedures contained in part 2 of the Special District Act were necessary for the "coordinated and orderly creation of special districts and for the logical extension of special district services throughout the state," and noting that "it is the policy of this state to provide for and encourage the consolidation of special districts and to provide the means therefor by simple procedures").

¶45 For these reasons, I would conclude that a lessee of a mineral estate is not a "fee owner" for purposes of section 32-1-401(1)(a).

## D. Process For Including Real Property Into A Special District

¶46 Lessees further assert that the division erred in concluding that, because the severed mineral estates at issue are not "real property capable of being served with facilities of the special district" under section 32-1-401(1)(a), the owners of 70 Ranch could, by petition, join those severed mineral estates to the special district without giving notice to or obtaining the consent of the owners of those

9

interests. *Bill Barrett Corp.*, ¶¶ 47, 49. I agree that the division misconstrued the statute in this regard.

¶47 As noted above, section 32-1-401(1)(a) provides, in pertinent part, that a special district's boundaries "may be altered by the inclusion of additional real property by the fee owner or owners of one hundred percent of any real property capable of being served with facilities of the special district" filing a written petition requesting such inclusion. The statute further provides that this petition shall state, among other things, "that assent to the inclusion of such property in the special district is given by the fee owner or owners thereof." *Id.*

¶48 The division began its analysis of these provisions by opining that "capable of being served with facilities of the special district" modifies "fee owner or owners of one hundred percent of any real property" and thus tells special districts which owners must petition. *Bill Barrett Corp.*, ¶ 41. I agree with that determination.

¶49 The division went on to state, however, that the phrase "capable of being served with facilities of the special district" does not limit what property may be included, and because a severed mineral estate is not property capable of being served with facilities of the special district, owners of such estates need not petition for inclusion, or consent to being included, in the district. *Id.* at ¶¶ 41, 47. From this premise, the division opined that the failure of the 70 Ranch owners to show

10

in their petition for inclusion the consent of all severed mineral estate owners did not invalidate 70 Ranch's inclusion within the boundaries of the District here and did not invalidate the District's taxing authority. *Id.* at ¶ 49. The division thus affirmed the district court's grant of summary judgment for respondents, in which that court had concluded that the severed mineral estates under 70 Ranch could be included within the District, notwithstanding the fact that the owners and lessees of those estates did not petition for or consent to inclusion. *Id.* In addition, the division determined that the lack of consent of the mineral estate owners did not preclude the District from taxing Lessees. *Id.* at ¶ 23.

¶50 In reaching these conclusions, the division appears to have determined that a fee owner can join to a special district the interests of either a non-fee owner or of certain other real property owners whose properties are not capable of being served by the facilities of the district, without notice or consent, merely by filing a petition. With respect, I do not agree with that construction of section 32-1-401(1)(a).

¶51 Unlike the division, I perceive nothing in section 32-1-401(1)(a) that would allow a fee owner of a surface estate to petition to include a third-party's property interest in a special district. Nor do I read that statute as addressing how and when consent must be sought from third parties.

11

¶52 In my view, section 32-1-401(1)(a) plainly states that the fee owner or owners of one hundred percent of any real property capable of being served with the facilities of a special district can petition to have *their own properties* included within the district. Thus, the statute speaks of such owners' filing a petition in writing requesting that "such property" (i.e., their own property that is the subject of their petitions) be included. § 32-1-401(1)(a). The statute then goes on to require that the owners' petition state that "assent to the inclusion of such property" is given by the petitioning owners. *Id.* To me, this means merely that the petitioning owners must verify in their petitions that they are consenting to the inclusion of *their own properties*, not the properties of others, in the special district.

¶53 In short, I understand section 32-1-401(1)(a) as establishing a simple and expeditious means by which certain real property owners can include their own properties, not the properties of others, in a special district. Indeed, a different subsection—subsection 32-1-401(2)—provides the means by which certain real property owners may petition for the inclusion of someone else's property in a special district.

¶54 To conclude otherwise and to allow one property owner to include the property of another within a special district—without notice to or consent of that owner and when that owner's property is not capable of being served by the facilities of the district—would, as Lessees contend, implicate significant due

12

process concerns. This is because the effect of such inclusion would be to tax one property owner in order to fund facilities to be provided to other property owners. *See Landmark Towers Ass'n v. UMB Bank, N.A.*, 2018 COA 100, ¶ 28, 436 P.3d 1139, 1147 (concluding that the inclusion of certain properties in a special district for the sole purpose of taxing those properties to fund improvements on completely separate properties violated the included property owners' rights to due process).

¶55 In this regard, I am not convinced by the 70 Ranch owners' assertion (which the majority implicitly accepts, *see* maj. op. ¶ 23) that Lessees' due process rights were protected because the owners provided appropriate notice by publication. As the owners conceded at oral argument, they gave notice of their petition to include *their own property* within the District. Their petition said nothing about including Lessees' property in the District. Accordingly, even if Lessees were aware of the 70 Ranch owners' notice by publication, I do not believe that this notice necessarily apprised Lessees that their own property interests were at issue.

¶56 For these reasons, answering the second question on which we granted certiorari in this case, I would conclude that section 32-1-401(1)(a) did not permit the owners of 70 Ranch to join, by petition, Lessees' real property interests into the District, without notice or consent, merely because either Lessees were not fee owners or their interests were not capable of being served by the District. To the

contrary, I believe that the statute speaks only to the inclusion of the 70 Ranch owners' own property interests here.

¶57 The question thus becomes whether, once 70 Ranch is included in the District, the District has the authority to impose ad valorem taxes on Lessees' severed mineral interests, which lie beneath 70 Ranch and are therefore within the District's geographic boundaries. This is an interesting question and one that is of substantial consequence to all of the parties now before us (and, more generally, to all persons and entities holding interests in severed mineral estates and to special districts throughout Colorado). This also seems to be the question that the majority ultimately answers in this case, although it does not say so directly and suggests that it is not opining on the issue. *Compare* maj. op. ¶ 25 *with id.* at ¶ 22. But the division below did not address this question, Lessees' petition for a writ of certiorari did not ask us to consider it, we did not grant certiorari on it, and no party was given a full and fair opportunity to brief or argue it. Accordingly, I would leave this admittedly significant issue for another day, when the question is properly before us and the parties have had a full and fair opportunity to address it.

## II. Conclusion

¶58 For these reasons, addressing the two questions on which we granted certiorari, I would conclude that (1) a lessee of a severed mineral estate is not a

14

"fee owner" within the meaning of section 32-1-401(1)(a) and (2) that statute did not permit the owners of 70 Ranch to join, by petition, Lessees' real property interests into the District, without notice or consent, merely because either the Lessees were not fee owners or their interests were not capable of being served by the District. I would leave for a case in which the question is properly presented the issue of whether a special district may tax a severed mineral estate lying beneath a surface estate that is included within, and that is within the geographical boundaries of, the special district.

¶59 Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT and JUSTICE SAMOUR join in this dissent.