24CA1323 Woodruff v Tschetter 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1323
City and County of Denver District Court No. 23CV31623
Honorable Sarah B. Wallace, Judge

Courtney Woodruff, Gheri Smith, Cristobal Zambrano, Casey Hodges, Joshua
Shipley, Wesley Morgan, and Shannon Copeland,

Plaintiffs-Appellants,

v.

Tschetter Sulzer, P.C.; Cornerstone Apartment Services, Inc.; RedPeak
Properties, LLC; Echelon Property Group, LLC; Colorado Apartment
Association, Inc.; and Asset Living, LLC,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Haddon, Morgan and Foreman, P.C., Ty Gee, Jacob McMahon, Denver,
Colorado; Carol Kennedy, Denver, Colorado, for Plaintiffs-Appellants

Gordon Rees Scully Mansukhani LLP, John M. Palmeri, John R. Mann, Tamara
A. Seelman, Rose Zetzman, Denver, Colorado, for Defendant-Appellee Tschetter
Sulzer, P.C.

Womble Bond Dickinson (US) LLP, Frederick J. Baumann, Angela M. Vichick,
Joseph Hykan, Denver, Colorado, for Defendant-Appellee Cornerstone
Apartment Services, Inc.

Bryan Cave Leighton Paisner LLP, Timothy M. Reynolds, Marcia M. Levitan-Haffar, Boulder, Colorado, for Defendant-Appellee RedPeak Properties, LLC

Clark Hill PLC, Stefanie Mann Chadha, Claire E. Wells Hanson, Darren B. Kaplan, Denver, Colorado, for Defendants-Appellees Echelon Property Group, LLC, and Asset Living, LLC

Greenberg Traurig LLP, Naomi Beer, H. Camille Papini-Chapla, Denver, Colorado for Defendant-Appellee Colorado Apartment Association, Inc.

Spencer R. Bailey, Denver, Colorado, for Amicus Curiae CED Law

¶ 1    Plaintiffs, Courtney Woodruff, Gheri Smith, Cristobal Zambrano, Casey Hodges, Joshua Shipley, Wesley Morgan, and Shannon Copeland (collectively, the tenants), appeal the district court's C.R.C.P. 56(h) order and subsequent judgment dismissing their claims against defendants, Cornerstone Apartment Services, Inc.; RedPeak Properties, LLC; Echelon Property Group, LLC (Echelon); and Asset Living, LLC (collectively, the landlords), as well as the law firm representing the landlords, Tschetter Sulzer, P.C. (Tschetter Sulzer), and the Colorado Apartment Association, Inc. (CAA) (collectively with the landlords, the defendants).  We reverse the judgment of dismissal and remand the case for further proceedings consistent with this opinion.

## I.    Introduction

¶ 2    A tenant unlawfully detains real property by retaining possession of the premises without the landlord's permission (1) after the tenant has defaulted in rent payments; and (2) after the landlord has given the tenant timely written notice requiring, in the alternative, the payment of rent or vacating the premises.  § 13-40-104(1)(d), C.R.S. 2025.  As relevant here, if a landlord properly demands payment of the amounts owed and the tenant fails to cure

the default by paying them within ten days, the landlord may file a forcible entry and detainer (FED) action, seeking "rent due or to become due, present and future damages, costs, and any other relief to which [the landlord] is entitled." § 13-40-110(1)(e), C.R.S. 2025.

¶ 3    In 2021, the General Assembly extended the cure period available to a tenant who falls behind on rent by allowing the tenant to bring her account up to date *after* an FED action has been filed — so long as she does so *before* the court issues a judgment in the landlord's favor. *See* Ch. 349, sec. 3, § 13-40-115(4), 2021 Colo. Sess. Laws 2264. Specifically,

> [a] landlord who provides a tenant with proper notice of nonpayment shall accept payment of the tenant's full payment *of all amounts due according to the notice, as well as any rent that remains due under the rental agreement*, at any time until a judge issues a judgment for possession . . . .

§ 13-40-115(4), C.R.S. 2023 (emphasis added).[1]

¶ 4     This appeal centers in large part on the italicized language above — more specifically, what monetary conditions, if any, a landlord can impose on a tenant's attempt to cure a default during the period after an FED action has been filed but before the court has issued a judgment for possession. Based primarily on a legislative prohibition on one-way fee-shifting provisions in residential leases, *see* § 38-12-801(3)(a)(II), C.R.S. 2023, the tenants contend that — between 2021 and 2023, when the statutory language at issue was in effect — a landlord could not require them to pay attorney fees associated with filing an FED action as a condition of exercising the statutory right to cure. The defendants disagree, arguing that, during that two-year period, nothing in the governing statutes prohibited a landlord from recouping the

---

[1] Section 13-40-115(4), C.R.S. 2023, in effect at the time of the events at issue, has since been amended. *See* Ch. 229, sec. 11, § 13-40-115(4), 2025 Colo. Sess. Laws 1056. And it appears from the parties' briefing that the practices challenged in this appeal ceased following a 2023 amendment to section 38-12-801(3)(a)(II), C.R.S. 2023. *See* Ch. 372, sec. 1, § 38-12-801(3)(a), 2023 Colo. Sess. Laws 2229-30. Accordingly, to minimize confusion, all citations to sections 13-40-115 and 38-12-801 in this opinion are to the 2023 version of the Colorado Revised Statutes.

attorney fees it incurred in connection with the FED action as part of the tenant's exercise of the statutory right to cure.

## II.  Factual and Procedural Background

¶ 5     Before August 7, 2023 (the effective date of the amendment to section 38-12-801(3) described in footnote one), each of the tenants entered into residential leases with one of the landlords.  All the leases — which relied on a form that Tschetter Schulzer drafted and that the CAA made available to the landlords — included a paragraph titled "Statutory Right to Cure" with language substantially similar to the following:

> If you exercise your statutory right to pay in response to an eviction notice after the notice has expired and after our attorney has filed an eviction case with a court to enforce our legal rights but before the court has entered a judgment for possession, you agree to pay us our current attorney's fees and court costs as set forth in the eviction notice in addition to any other amounts due pursuant to the Lease and all other amounts set forth in the notice.

¶ 6     Through this language — which we will refer to as "the fees provision" — each tenant agreed to pay her landlord's attorney fees if she defaulted on rent, the landlord filed an FED action against her, and she exercised the right to cure under section 13-40-115(4)

4

after the FED action was filed. The landlord made no reciprocal promise to pay attorney fees incurred by the tenant during the cure period of an FED proceeding.

¶ 7    At some point, each tenant fell behind on rent and, as contemplated by section 13-40-104(1)(d), was served[2] with a notice requiring her to either bring her rent payments up to date within ten days or relinquish possession of the property. Consistent with the language in the leases, each notice stated that, if the tenant failed to pay all past-due rent before her landlord "file[d] an eviction lawsuit with the court," "attorney fees and court costs" associated with the eviction lawsuit would be added to the tenant's account balance. Although no FED action had been filed at the time the tenants were notified of the default, the notices also informed the tenants that, along with their back rent, they would owe a specific amount of attorney fees ranging between $300 and $500 if they had not made their rent payment in full before such a lawsuit was filed.

---

[2] The landlords served most tenants by posting (i.e., affixing the summons and complaint to the tenants' doors) rather than effectuating personal service. *See* § 13-40-112(2), C.R.S. 2023.

¶ 8	None of the tenants paid by the due date, and the landlords initiated FED actions against them.  All tenants eventually resolved their FED actions without a trial — either by curing or by entering separate stipulation agreements with their landlords.  In both circumstances, however, the landlords added attorney fees associated with filing the FED action to the tenants' account ledgers.  Even after their rent payments were brought up to date, the tenants' accounts remained in arrears if they did not also pay the attorney fees included in the notice.

¶ 9	The tenants filed a putative class action lawsuit alleging that the defendants illegally collected attorney fees (1) when they assessed the fees without a court order; (2) when they served the notices by posting rather than via personal service; (3) when the tenants cured; and (4) when the tenants entered into stipulations to resolve their defaults.  In addition to requesting a declaratory judgment and a permanent injunction, the tenants asserted that the defendants were liable for civil theft, deceptive trade practices, and civil conspiracy.  The tenants also asserted an equitable claim for unjust enrichment.

¶ 10    Before proceeding with discovery or class certification, the district court considered the legal question underpinning the tenants' claims: whether the landlords' attorney fees collection practices were permitted by the governing FED statutes.  The district court ordered the parties to brief the question whether, before August 2023, Colorado law "allowed landlords to seek attorney[] fees they incurred in filing an [FED] action where the tenants agreed to pay those fees in their leases, as part of the amount the tenants are required to pay to exercise their statutory right to cure."  In a detailed written order, the court found that the landlords' practice was permissible under the statutes that were in effect at the time that the tenants executed their leases.

¶ 11    In reaching this conclusion, the district court concluded that section 38-12-801(3)(a)(II) (which prohibits "one-way, fee-shifting clause[s]" from appearing in written rental agreements) and section 13-40-123, C.R.S. 2025 (which prohibits prevailing party attorney fees awards in FED actions based on one-way fee-shifting clauses), did not apply to FED cases when there was no prevailing party and the action was resolved without a trial.  As further support for its ruling, the district court also relied on section 13-40-115(4), which

7

provides that, before a judgment for possession is entered, a landlord must accept as a cure "full payment of all amounts due according to the notice, as well as any rent that remains due under the rental agreement." The court found that the statute's reference to all "amounts due according to the notice," *id.*, rather than just rent, meant that the landlord could demand attorney fees as a condition of exercising the statutory right to cure.

¶ 12     The tenants sought reconsideration of the court's order and filed a second amended complaint. The district court denied the motion and then dismissed the entire action based on its previous conclusion that the landlords' practices were not prohibited by statute.

¶ 13     The tenants now appeal the judgment. Although they invite us to address a myriad of questions on appeal, we need only consider whether the district court (1) correctly ruled, as a matter of law, that the landlords' practices were legal; and (2) based on that conclusion, properly dismissed the tenants' complaint.

### III.   C.R.C.P. 56(h) Order

¶ 14     Construing sections 38-12-801(3)(a)(II), 13-40-123, and 13-40-115(4) together, the district court concluded that the statutes in

effect between 2021 and 2023 "allowed landlords to seek attorney[] fees they incurred in filing an [FED] action where the tenants agreed to pay those fees in their leases as part of the amount the tenants are required to pay to exercise their statutory right to cure." We respectfully disagree with the district court's interpretation of these statutes.

A. Standard of Review and Applicable Law

¶ 15    We review questions of statutory interpretation de novo. *Bill Barrett Corp. v. Lembke*, 2020 CO 73, ¶ 14. Our goal when interpreting a statute is to give effect to the General Assembly's intent. *Id.* To determine legislative intent, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *Id.* (citation omitted). If statutory language is unambiguous, we effectuate the plain meaning and look no further. *Larimer Cnty. Bd. of Equalization v. 1303 Frontage Holdings LLC*, 2023 CO 28, ¶ 29. If the language is ambiguous, we consider other tools of statutory interpretation, such as the statutory history, the purpose behind

the statute's enactment, and the consequences of different constructions.  *Id.*; § 2-4-203, C.R.S. 2025.

### B.  Section 38-12-801(3)(a)(II)

¶ 16    The tenants' leases require them to pay the landlords' attorney fees as a condition of exercising the statutory right to cure after an FED action has been filed.  With little variation among the leases, the fees provision states:

> If Resident exercises Resident's statutory right to pay in response to an eviction notice after the notice has expired and after Agent's attorney has filed an eviction case with a court to enforce Agent's legal rights but before the court has entered a judgment for possession, Resident agrees to pay Agent's current attorney's fees and court costs as set forth in the eviction notice in addition to any other amounts due pursuant to the Lease and all other amounts set forth in the notice.

The district court ruled that section 38-12-801(3)(a)(II) did not prohibit the fees provision.

¶ 17    Section 38-12-801(3)(a)(II), as it existed when the tenants signed their leases, stated that a written rental agreement must not include

> [a] one-way, fee-shifting clause that awards attorney fees and court costs only to one party. Any fee-shifting clause contained in a rental

10

> agreement must award attorney fees to the prevailing party in a court dispute concerning the rental agreement, residential premises, or dwelling unit.

*Id.* Under the plain language of this statute, (1) leases may not include one-way fee-shifting clauses, and (2) any fee-shifting clause in a lease must award attorney fees to "the prevailing party in a court dispute." *Id.* Any clause that violates section 38-12-801(3) is void and unenforceable. § 38-12-801(3)(b).

¶ 18    In its order denying the tenants' motion for reconsideration, the district court explained that section 38-12-801(3)(a)(II) does not prohibit the fees provision because (1) "a plain reading of [the statute] makes it clear that the second sentence is further explaining the first sentence which prohibits one-way fee-shifting provisions in rental agreements"; and (2) the fees provision falls outside the scope of the statute because the cost of initiating an FED action is borne solely by a landlord, and, thus, fees cannot be bilaterally "shifted." As a result, the court ruled, the statutory prohibition on one-way fee-shifting clauses applies only to cases in which there is a "prevailing party" — meaning cases with some adjudication on the merits with a "winner" and a "loser."

Accordingly, section 38-12-801(3)(a)(II) does not bar the fees provision because the fees provision applies only to the prejudgment phase of an FED case, and there is no "prevailing party" when a tenant exercises the statutory right to cure before judgment for possession is entered.

¶ 19 Contrary to the district court's understanding of the statute, we conclude that the fees provision is precisely what section 38-12-801(3)(a)(II) prohibits: "A one-way, fee-shifting clause that awards attorney fees and court costs only to one party." The fees provision requires a tenant to pay her landlord's attorney fees as a condition of exercising the statutory right to cure once an FED action is filed — it does not contemplate a situation in which the tenant's fees could be shifted to the landlord if the default is cured before the court enters an order for judgment of possession.

¶ 20 The district court was unmoved by this asymmetry because, it observed, "[t]he provision at issue requiring the tenant to pay for the cost of initiating an FED action is not one that would ever be 'shifted' to the landlord because it is a cost that can only be incurred by the landlord." We acknowledge that a landlord may need to pay an attorney to draft and file an FED complaint. But the

FED process is far from cost-free for a tenant. Indeed, a tenant might well incur her own fees consulting an attorney after receiving a landlord's notice of default, after an FED action is filed, or at any other point before the court enters judgment. And there are certainly situations in which legal representation obtained by the tenant could uncover a mistaken demand by the landlord or lead to a negotiated resolution of a dispute over the terms of the lease. Nonetheless, neither the district court in its order nor the defendants on appeal offer any cogent reason why such fees incurred by the tenant would not be "shiftable" in the same way that fees under a two-way prevailing-party provision may be shifted after entry of judgment.

¶ 21    We are likewise unpersuaded by the district court's conclusion that the second sentence of section 38-12-801(3)(a)(II) — which provides in part that "[a]ny fee-shifting clause contained in a rental agreement must award attorney fees to the prevailing party in a court dispute" — is intended to narrow the scope of the statutory prohibition on one-way fee-shifting clauses. The first sentence of section 38-12-801(3)(a)(II) is clear: It flatly prohibits a lease from including a "one-way, fee-shifting clause" without making any

13

reference to FED litigation at all, much less any reference to who might be considered the prevailing party in such a case. And we do not add words to the General Assembly's text. *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 22. Instead, we give effect to the words chosen, presuming the General Assembly meant what it said. *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000). Here, the General Assembly clearly stated that "written rental agreement[s]" cannot include one-way fee-shifting clauses of any type. § 38-12-801(3)(a)(II). The statute's subsequent reference to "prevailing parties" does not change the scope of that prohibition. *Id.* To the contrary, the second sentence clarifies what types of fee-shifting clauses *are* permitted — those that shift fees to the prevailing party.

¶ 22 Enforcing the plain language of section 38-12-801(3)(a)(II)'s first sentence is also consonant with the broader statutory scheme. Section 38-12-801, titled "Written rental agreement — prohibited clauses — copy — tenant," sets forth documentation requirements for written rental agreements, including what types of clauses and statements such agreements must and must not include. Nothing in section 38-12-801 suggests that any of its required inclusions or particular prohibitions apply only in the event that a court enters a

14

final judgment for one party against another. Thus, interpreting section 38-12-801(3)(a)(II) as a prohibition on one-way fee-shifting clauses in leases without regard to potential future judicial proceedings gives sensible effect to the governing statutes as a whole.[3]

¶ 23    In sum, the fees provision in the tenants' leases violates section 38-12-801(3)(a)(II) because it (1) appears in a written rental agreement and (2) shifts the landlords' attorney fees to the tenants without allowing for the possibility that the landlords ever bear the tenants' fees — or even the landlords' own fees — in the event that the tenants exercise their statutory right to cure after an FED action is filed. We therefore conclude that the district court incorrectly ruled as a matter of law that, prior to August 2023, Colorado law allowed landlords to collect attorney fees when their

---

[3] Although their argument is not entirely clear, several of the defendants appear to contend that section 38-12-801(3)(a)(II) does not bar one-way fee-shifting provisions in cases with no prevailing party determination because such a prohibition would conflict with section 38-12-801(3)(a)(I), which forbids the inclusion of "[a] clause that assigns a penalty to a party stemming from an eviction notice or an eviction action that results from a violation of the rental agreement." We perceive no conflict. A prohibition on penalties associated with receiving an eviction notice is in no way inconsistent with a prohibition on one-way fee-shifting clauses.

tenants cured, but "the tenants agreed to pay those fees in their leases."

### C.    Remaining Statutory Arguments

¶ 24    The foregoing analysis also resolves the district court's interpretation of sections 13-40-123 and 13-40-115(4).

#### 1.    Section 13-40-123

¶ 25    Section 13-40-123 states as follows:

> The prevailing party in any action brought under the provisions of this article is entitled to recover damages, reasonable attorney fees, and costs of suit; except that a residential landlord or tenant who is a prevailing party shall not be entitled to recover reasonable attorney fees unless the residential rental agreement between the parties contains a provision for either party to obtain attorney fees.

Under the plain language of the statute, a landlord can recover attorney fees related to bringing an FED action if (1) it is the prevailing party, and (2) there is a lease provision for either party to obtain attorney fees. However, because the fees provision in the tenants' leases violated section 38-12-801(3)(a)(II), there is no valid lease provision entitling either party to attorney fees. *See* § 38-12-801(3)(b) ("Any clause in violation of this subsection (3) is null and

void and unenforceable."). Thus, the landlords were not entitled to recover attorney fees under section 13-40-123.

### 2. Section 13-40-115(4)

¶ 26    As discussed above, section 13-40-115(4) establishes the statutory right to cure. In relevant part, the statute provides as follows:

> (4) A landlord who provides a tenant with proper notice of nonpayment shall accept payment of the tenant's full payment of all amounts due according to the notice, as well as any rent that remains due under the rental agreement, at any time until a judge issues a judgment for possession pursuant to subsection (1) or (2) of this section. . . . Once a court has confirmation that the full amount has been timely paid, the court shall:
>
> (a) Vacate any judgments that have been issued; and
>
> (b) Dismiss the action with prejudice.

§ 13-40-115(4).

¶ 27    As the district court noted, the statute allows the landlord to demand not only "any rent that remains due under the rental agreement" in the notice but also "all amounts due according to the notice" — meaning that a landlord may charge amounts other than past-due rent as part of "all amounts due" as a condition of

17

exercising the statutory right to cure. We agree with that interpretation, at least to the extent that it suggests that a tenant must pay any amounts *currently* due at the time she receives the notice of default.[4] We do not agree, however, that the other "amounts due according to the notice" can include attorney fees that have not yet been incurred or that are based on lease provisions that run afoul of the governing statutes. And, as we have already discussed, the one-way fee-shifting language in the fees provision *is* statutorily prohibited. As a consequence, insofar as the notice includes a demand for attorney fees based on the fees provision, it is unenforceable.

¶ 28    Therefore, section 13-40-115(4), as it existed at the time that the tenants entered into their leases, did not permit the landlords to collect statutorily prohibited attorney fees just because they included these fees in the notice.

---

[4] We need not resolve the broader question of what charges may be included in the notice as part of "all amounts due." Rather, we only consider whether the notice's prospective demand for attorney fees is enforceable given our interpretation of section 38-12-801(3)(a)(II).

18

## IV. Defendants' Alternative Arguments

¶ 29 The defendants raise a host of different arguments as to why the district court's judgment of dismissal should be affirmed on other grounds. We acknowledge that, "as an appellate court, we have discretion to affirm the trial court's dismissal on grounds that the trial court did not rely on." *Educhildren LLC v. Cnty. of Doulgas Bd. of Equalization*, 2023 CO 29, ¶ 26. However, nearly all of the defendants' various alternative defenses appear to require additional factual development.[5] By way of example, Echelon claims that it should be dismissed as a defendant because its tenant signed a class action waiver. The existence and validity of such a waiver is not part of the record on appeal and does not appear to have been considered by the district court. Therefore, with one exception, we decline to address the defendants' alternative arguments on the merits.

---

[5] Some of the defendants' alternative appellate arguments are also inadequately developed for our review. Tschetter Sulzer, for example, summarily asserts that the tenants' claims are barred by claim preclusion, but neither describes the legal framework for applying that doctrine nor applies it to the facts before us. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 26 ("We don't consider undeveloped and unsupported arguments." (quoting *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12)).

¶ 30 The one issue we conclude we must address is Tschetter Sulzer's argument that the litigation privilege categorically bars the tenants' claims against it, as well as the potential implications of that argument on remand.

¶ 31 Before the district court ordered the parties to submit briefs addressing the legality of the fees provision, Tschetter Sulzer moved to dismiss the tenants' claims based on the litigation privilege, and the district court denied the motion. The district court ruled that the litigation privilege was inapplicable for two reasons. First, the court concluded that there was no authority for the proposition that the litigation privilege would bar a claim against lawyers who "[a]re alleged to have engaged in fraud with their clients." And second, the court ruled, "[E]ven if the litigation privilege does apply to fraud[,] . . . for the privilege to attach, [Tschetter Sulzer's] statements must be made in good faith."

¶ 32 We disagree with the district court's reasoning. Nonetheless, as we explain below, we conclude that some of Tschetter Sulzer's alleged conduct is protected by the litigation privilege. On remand, the tenants' claims must be narrowed accordingly.

¶ 33      At the threshold, we observe that while the litigation privilege most commonly arises in the defamation context, the privilege may also bar other torts. *See Belinda A. Begley & Robert K. Hirsch Revocable Tr. v. Ireson*, 2020 COA 157, ¶ 26 ("[T]he litigation privilege may protect an attorney from liability for his nondefamatory statements."); *see also Patterson v. James*, 2018 COA 173, ¶ 21 (finding that attorney's statements, including drafting and filing legal documents, were protected by the litigation privilege in a nondefamation case); *Buckhannon v. U.S. W. Commc'ns, Inc.*, 928 P.2d 1331, 1335 (Colo. App. 1996) ("The privilege not only shields attorneys from defamation claims arising from statements made during the course of litigation, but it also bars other non-defamation claims that stem from the same conduct."). Thus, insofar as the district court rejected Tschetter Sulzer's assertion of the litigation privilege simply because "this is not a defamation case" but instead involves allegations of "theft, conversion, and fraud," it erred.

¶ 34      We also disagree with the district court's suggestion that, to the extent that Tschetter Sulzer's "statements" were not made in good faith "but were [instead] made as part of [a] scheme to defraud

or steal from the Plaintiffs," they would not be protected by the litigation privilege. Tschetter Sulzer's conduct during the litigation of a particular case is categorically protected by the litigation privilege. *See Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 187 (The litigation privilege "provides 'absolute immunity' to the speaker, even if the statements are false, defamatory, and made with actual malice."); *see also Begley*, ¶ 13 ("The litigation privilege exists to encourage and protect free access to the courts for litigants and their attorneys."). For prelitigation conduct or statements, however, whether the litigation privilege applies turns on whether litigation against a specific party is being contemplated in good faith at the time the statement is made. *Coomer*, ¶ 187; 1A Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *American Law of Torts* § 5:20, Westlaw (Monique C. M. Leahy ed., database updated Feb. 2026) ("For parties to be able to take advantage of the litigation privilege by applying it to their own communications, they must establish that at the time they made the subject communications, they themselves actually contemplated prospective litigation, seriously and in good faith.").

¶ 35    Accordingly, we cannot accept the district court's wholesale rejection of Tschetter Sulzer's assertion of the litigation privilege. But nor can we resolve Tschetter Sulzer's litigation privilege argument as a matter of law because its premise — that "Plaintiffs admitted Tschetter Sulzer's conduct occurred during the course of litigation" — is only partially supported by the record.

¶ 36    To be sure, much of the conduct that the tenants allege in their complaint — including, but not necessarily limited to, filing an FED action against a particular tenant and relying on the terms of that tenant's lease in doing so — appears to have occurred during the course of litigation.  To the extent that the tenants' claims rely on such allegations, any "statements" Tschetter Sulzer made either during the course of an FED action or after it began contemplating litigation against a specific tenant in good faith are privileged.

¶ 37    But at least some of Tschetter Sulzer's alleged conduct could fall outside the scope of the litigation privilege because, as framed by the allegations in the tenants' complaint, it does not contemplate prospective litigation seriously and in good faith.  As the tenants explain in their reply brief, "[T]he [second amended complaint] alleges Tschetter [Sulzer] prepares, and conspires with non-client

23

CAA in preparing demand forms, leases and other FED documents for use by landlords and tenants *without regard* to any particular judicial proceedings, let alone the underlying actions; these forms contain false and deceptive content." (Emphasis added.) Given these allegations, whether the litigation privilege would apply to any or all of Tschetter Sulzer's alleged prelitigation conduct cannot be resolved without further factual development. *See Action Apartment Ass'n v. City of Santa Monica,* 163 P.3d 89, 102 (Cal. 2007) ("Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact.").[6]

## V.     Disposition

¶ 38     After the district court affirmed the Rule 56(h) order, Tschetter Sulzer moved for judgment on the pleadings under C.R.C.P. 12(c), and all other defendants moved to dismiss under C.R.C.P. 12(b)(5). Relying on its reasoning in the C.R.C.P. 56(h) order, the district

---

[6] In reaching this conclusion, we address only whether the litigation privilege absolutely barred the tenants' claims against Tschetter Sulzer. Should the district court determine on remand that some of Tschetter Sulzer's alleged conduct is not protected by the litigation privilege, we express no opinion on whether other privilege-related defenses may be available.

court dismissed the tenants' claims. Given our disagreement with the district court's conclusion that the landlords' practices are permitted by statute, we must reverse the district court's order.

¶ 39    We reverse the judgment of dismissal against all the defendants and remand the case for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE SCHUTZ concur.