Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 15**

**No. 17SA77, <u>Hernandez v. Ray Domenico Farms, Inc.</u>—C.A.R. 21.1, Certified Questions of State Law—Colorado Wage Claim Act—Statute of Limitations— Statutory Construction.**

The supreme court accepts jurisdiction under C.A.R. 21.1 to answer a certified question of law from the United States District Court for the District of Colorado regarding how far back in time a terminated employee's unpaid wage claims can reach under the Colorado Wage Claim Act, §§ 8-4-101 to -123, C.R.S. (2017).  The supreme court holds that, under the plain language of section 8-4-109, a terminated employee may seek any wages or compensation that were unpaid at the time of termination; however, the right to seek such wages or compensation is subject to the statute of limitations found in section 8-4-122.  That statute of limitations begins to run when the wages or compensation first become due and payable and thus limits a terminated employee to claims for the two years (three for willful violations) immediately preceding termination.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 15

### Supreme Court Case No. 17SA77
*Certification of Question of Law*
United States District Court for the District of Colorado
Case No. 16-CV-1929-WJM-CBS

### Plaintiffs:

Adolfo Hernandez, Rogelio Flores-Escobar, Francisco Silva-Garcia, Martin Perez-Medel,

Gustavo Arellano-Olmos, Luis Leon-Salinas, and Manuel Morales,

v.

### Defendants:

Ray Domenico Farms, Inc.; Gregory L. Domenico; and Theresa M. Domenico.

### Certified Question Answered
*en banc*
March 5, 2018

**Attorneys for Plaintiffs:**
The Kelman Buescher Firm
Andrew H. Turner
Ashley K. Boothby
  *Denver, Colorado*

Colorado Legal Services: Migrant Farm Workers Division
Jenifer Rodriguez
Matthew Baca
  *Denver, Colorado*

**Attorneys for Defendants:**
The Litigation Boutique LLC
Leah P. VanLandschoot
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Civil Justice League:**
Husch Blackwell LLP
Christopher L. Ottele
Sonia Anderson

*Denver, Colorado*

**Attorneys for Amici Curiae Southern Poverty Law Center, Farmworker Justice, El Centro Humanitario Para Los Trabajadores, and Plaintiff Employment Lawyers Association:**
Law Office of David Lichtenstein, LLC
David Lichtenstein
Matt Molinaro
Kristina Rosett
  *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1 We accepted jurisdiction under C.A.R. 21.1 to answer a certified question of law from the United States District Court for the District of Colorado regarding how far back in time a terminated employee's unpaid wage claims can reach under the Colorado Wage Claim Act, §§ 8-4-101 to -123, C.R.S. (2017). Answering this question requires us to examine the interaction among three provisions of the law. Under section 8-4-103 ("section 103"), employers must pay employees at regular intervals during their employment. Section 8-4-109 ("section 109") requires employers to pay employees upon termination for unpaid wages or compensation. Under the Wage Claim Act's statute of limitations, "all actions" must be commenced within two years (three for willful violations), "and not after that time." § 8-4-122, C.R.S. (2017). The certified question asks:

> Does Colo. Rev. Stat. § 8-4-109(1)(a) permit a terminated employee to sue for wages or compensation that went unpaid at any time during the employee's employment, even when the statute of limitations (Colo. Rev. Stat. § 8-4-122) has run on the cause of action the employee could have brought for those unpaid wages under Colo. Rev. Stat. § 8-4-103(1)(a)?

We hold that under the plain language of section 109, an employee may seek any wages or compensation that were unpaid at the time of termination; however, the right to seek such wages or compensation is subject to the statute of limitations. That statute of limitations begins to run when the wages or compensation first become due and payable and thus limits a terminated employee to claims for the two (or three) years immediately preceding termination. Thus, we answer the certified question in the negative.

## I.  Facts and Procedural History

¶2      Defendant Ray Domenico Farms, Inc.[1] grows organic vegetables in Platteville, Colorado.  Plaintiffs are three year-round and four seasonal migrant workers who had been previously employed by Domenico Farms from as far back as 1992.  All of the Plaintiffs were paid by the hour, and allege that they never received overtime pay during their employment with Domenico Farms.  While agricultural workers are generally exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements, see generally 29 C.F.R. pt. 780 (2017), Plaintiffs allege that they performed non-agricultural tasks in weeks in which they worked more than forty hours.  Thus, Plaintiffs allege that they were entitled to overtime wages under the FLSA for those weeks.  See 29 C.F.R. § 780.11 (2017) ("Where an employee in the same workweek performs work which is exempt under one section of the Act and also engages in work to which the Act applies but is not exempt under some other section of the Act, he is not exempt that week, and the wage and hour requirements of the Act are applicable.").  The four seasonal-worker Plaintiffs also allege that they were denied the Adverse Effect Wage Rate hourly wages they should have received under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").  In January 2016, several of the Plaintiffs wrote a letter to Defendants in which they asserted that they had not been properly paid wages under both of these federal laws.  By April 2016, all of the Plaintiffs had been terminated.

---

[1] Plaintiffs named two principals of Ray Domenico Farms, Inc.—Gregory L. Domenico and Teresa M. Domenico—as co-defendants in their lawsuit.  However, Plaintiffs' claims under the Colorado Wage Claim Act are brought only against Domenico Farms.

¶3 Plaintiffs brought suit in July 2016 in the United States District Court for the District of Colorado alleging, in pertinent part, violations of the FLSA, the AWPA, and the Colorado Wage Claim Act ("the Act"). The parties filed cross-motions for partial summary judgment on the issue of whether section 109 allows a terminated employee to seek <u>all</u> wages that have been unpaid during the employment—even those that might seem to be time-barred because they became due and payable more than two (or three) years earlier. Judge William J. Martinez concluded that, as there are "at least two plausible interpretations of section 109" and the outcome of the decision was "of enormous importance" to employers and employees in Colorado, it was appropriate to <u>sua sponte</u> certify the question to this court. We accepted jurisdiction.

## II. Analysis

¶4 Plaintiffs argue that, under section 109 of the Act, employees are entitled to seek any unpaid wages or compensation earned during the course of their employment, as the statute of limitations begins to run on their section 109 claim only upon the termination of the employment relationship. The section 109 claim, they argue, revives a terminated employee's right to seek unpaid wages that he would be time-barred from receiving if he were still employed and bringing a suit under section 103. Defendant argues that section 109 allows a terminated employee to collect wages only due as part of the final paycheck. Neither of these arguments is consistent with the statutory language and structure. We agree that the plain language of section 109 allows employees to seek both the wages or compensation that only become due and payable at the end of the employment and those that had previously become due and payable.

5

However, we cannot agree that section 109 allows Plaintiffs to resurrect claims for wages that were time-barred as of the date of termination.

## A. Standard of Review and Canons of Construction

¶5    Under Appellate Rule 21.1, this court may answer questions of Colorado law as to which it appears we have not issued controlling precedent when those questions are certified to us from a federal court.  C.A.R. 21.1.   We conduct our review of such questions de novo.  Leonard v. McMorris, 63 P.3d 323, 326 (Colo. 2003).

¶6    In interpreting the language of the Act, we are guided by familiar principles. Our fundamental duty in construing statutes is to give effect to the intent of the General Assembly.  E.g., Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004).  We look first to the plain language of the statute; if it is clear and unambiguous, then we look no further and "apply the statute as written."  Id. (quoting In re 2000–2001 Dist. Grand Jury, 97 P.3d 921, 924 (Colo. 2004)).  In so doing, we must consider the statute in its entirety, giving "harmonious and sensible effect to all its parts."  Leonard, 63 P.3d at 326.  In construing statutes of limitation, we attempt to interpret them "consistent with their purposes of promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims."  Morrison v. Goff, 91 P.3d 1050, 1052 (Colo. 2004).

## B. Section 109 Allows Former Employees to Seek Previously Unpaid Wages

¶7    As an initial matter, we must first determine what sorts of wages may be sought under section 109.  Phrased differently, does section 109 refer only to wages that would be included in the "last paycheck," or may former employees use it to seek other wages

6

that previously went unpaid and that could have been sought during employment under section 103? Plaintiffs argue that there are no words of limitation in section 109 to restrict former employees from seeking previously unpaid wages. Defendant argues that section 103 and section 109 govern two mutually exclusive sets of wages and compensation. Based on the Act's plain language, we agree with Plaintiffs on this initial point: terminated employees are not limited under section 109 to only those wages or compensation that become due and payable upon separation, but may seek prior earned-yet-unpaid wages or compensation as well.[2]

¶8 Mindful that we must read the Act as a coherent whole, we begin by looking to the plain language of section 109. Section 109(1)(a) provides in pertinent part: "When an interruption in the employer–employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is [sic] due and payable immediately." The Act defines "wages or compensation" as:

> (I) All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. No amount is considered to be wages or compensation until such amount is earned, vested, and

---

[2] In fact, we have previously recognized that the Act requires an employer upon termination of an employee to "pay the employee[] all earned but yet unpaid wages and compensation, within the time period the Wage Claim Act prescribes." Leonard, 63 P.3d at 328 (emphasis added) (discussing the Act in the context of construing whether officers and agents of a corporation are jointly and severally liable for payment of wages or compensation).

determinable, at which time such amount shall be payable to the employee pursuant to this article.

(II) Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee;

(III) Vacation pay earned in accordance with the terms of any agreement. If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.

§ 8-4-101(14)(a), C.R.S. (2017).

¶9 Under the Act's plain language, a terminated employee is entitled to receive "all amounts for labor or service performed," § 8-4-101(14)(a), which are "earned, vested, determinable, and unpaid at the time of discharge," § 8-4-109(1)(a). This may include wages of the sort that are due and payable regularly throughout the time of employment and also some types of compensation—like vacation pay, § 8-4-101(14)(a)(III)—that are payable only at separation.

¶10 The only limitation the General Assembly placed on the types of wages or compensation to be received at termination was that they must be "earned, vested, determinable, and unpaid." § 8-4-109(1)(a). None of these words indicates an intent to limit section 109 to cover only wages or compensation properly paid in the final pay period and not any wages that could have been previously sought under section 103 but that remain unpaid at the time of termination. Thus, we find nothing in the text of section 109 that would limit the wages or compensation that can be sought thereunder to only the class of wages payable at the end of employment or as part of the final paycheck.

¶11 Defendant argues that we should read section 109 to include claims for only the final paycheck because of the language of section 103. That section provides in pertinent part: "All wages or compensation, <u>other than those mentioned in section 8-4-109</u>, earned by any employee in any employment . . . shall be due and payable for regular pay periods . . . ." § 8-4-103 (emphasis added). Defendant urges that section 103's exception for "those [wages or compensation] mentioned in section 8-4-109" demonstrates an intent by the General Assembly to create two mutually exclusive categories of remuneration under the two sections. We think this stretches the language of section 103 too far.

¶12 In fact, when read together, the sections suggest the opposite. Sections 109 and 101 (defining wages and compensation) demonstrate that the General Assembly understood that certain categories of wages or compensation—such as unused vacation time, bonuses, or commissions—would not be available until separation because they may not become "vested" or "determinable" under the employment agreement until that time. These types of compensation are therefore excluded from the regular paycheck provisions of section 103. The fact that certain types of wages are excluded from section 103 does not mean that a reciprocal limitation must be read into section 109. Had the General Assembly wished to exclude previously earned but still unpaid wages from being sought by a terminated employee under section 109, it clearly knew how to do so. But section 109 does not include the kind of limiting language included in section 103.

¶13 The language of the statute, read as a whole, suggests that the General Assembly sought only to clarify that employers had no obligation to include—and employees had no right to seek—those types of wages or compensation that could be paid out only at separation in the regularly occurring payments under section 103. To read this exclusion to apply in the opposite direction—to limit section 109 only to those types of compensation—would require inserting language into section 109 that is not there. We presume that the General Assembly did not idly include this exclusive language in section 103 and omit any similar language from section 109. Thus, we hold that terminated employees may seek previously unpaid wages or compensation at separation under section 109, subject to the statute of limitations as set forth in section C below.

### C. The Statute of Limitations Accrues from the Date the Wages First Became Due and Payable

¶14 Having resolved that section 109 allows Plaintiffs to pursue claims for unpaid wages that could have been brought under section 103 during their employment, we turn to what effect to give to the statute of limitations in section 8-4-122 ("section 122") for such claims. Although a terminated employee may bring a claim under section 109 for previously earned yet unpaid wages, the statute of limitations for those wages begins to run on the date that each set of wages first became due and payable—not on the date of separation.

¶15 We begin again with the plain language of the Act's statute of limitations:

> All actions brought pursuant to this article shall be commenced within two years after the cause of action accrues and not after that time; except

that all actions brought for a willful violation of this article shall be commenced within three years after the cause of action accrues <u>and not after that time</u>.

§ 8-4-122, C.R.S. (2017) (emphasis added). "A cause of action for . . . money owed . . . shall be considered to accrue on the date such . . . money owed becomes due." § 13-80-108. By operation of section 103, regularly earned wages or compensation become due and payable on regular paydays no more than ten days following the close of each pay period. § 8-4-103. Similarly, section 101(14)(a) provides that upon becoming earned, vested, and determinable, wages or compensation "shall be payable to the employee pursuant to this article." § 8-4-101(14)(a).

¶16    As we set forth above, a claim under section 109 can be for both wages or compensation that do not become earned, vested, or determinable until separation and for regular wages that had previously been earned but remain unpaid. The former do not become due and payable until the time of separation. The latter, however, had already become due and payable on the payday after the close of the pay period in which they were earned. If an employee fails to pursue a claim to receive unpaid wages for more than two (or three) years after those wages are due and payable, the employee's claim to those wages is extinguished by operation of the statute of limitations. Those wages are no longer due to the employee, and section 109 does nothing to make these extinguished claims due and payable again. The plain language of these sections shows that the General Assembly intended for claims to be brought within two or three years of when the wages became due and payable, <u>and not after that time</u>.

¶17    To allow a terminated employee to bring claims for wages that had become due and payable many years before would flout the very purpose of statutes of limitations: promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims. Morrison, 91 P.3d at 1052. The General Assembly has demonstrated its preference for defined limitations periods, prescribing a generic two-year statute of limitations period for "all other actions of every kind for which no other period of limitation is provided." § 13-80-102(1)(i), C.R.S. (2017). To allow the result Plaintiffs urge would in effect create an indefinite period for a statute of limitations.[3] This would be an unusual result. We decline to find that the General Assembly intended such an unusual result absent clear and specific language in the statute. Based on our reading of the plain language of the statute, we do not believe that the General Assembly intended this sort of absurd effect. See Leonard, 63 P.3d at 326.

¶18    This interpretation is bolstered when considered in the context of the entire statutory scheme. In particular, we note that the General Assembly recently amended the Act to add a requirement that employers keep their employment records for a period of at least three years. See § 8-4-103(4.5), C.R.S. (2017) ("An employer shall retain records reflecting the information contained in an employee's itemized pay statement as described in subsection (4) of this section for a period of at least three years after the wages or compensation were due."). The fact that this record-keeping period matches the maximum period of liability under the statute of limitations supports our

---

[3] Moreover, such an interpretation would also severely reduce the efficacy of the longer period allowed for willful violations under the statute of limitations, as employees could seek many years of wages for negligent conduct at separation.

12

conclusion that the General Assembly intended that a terminated employee could reach back no further than three years for wages that had been previously unpaid.

¶19 Finally, while our interpretation is grounded in the plain language of the Act, we note that legislative history and common sense corroborate our understanding of the General Assembly's intent. Section 122's statute of limitations was added in 1986 to "bring[] our laws into compliance with where the Federal Fair Labor Act is." Hearings on H.B. 86-1231 before the H. Business Affairs and Labor Comm., 55 Gen. Assemb., 2d Sess. (Feb. 11, 1986). The FLSA's statute of limitations utilizes the same two- or three-year framework as section 122. See 29 U.S.C. § 255(a) (2012) ("Any action . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."). The FLSA's implementing regulations provided, both in 1986 and today, that a cause of action under the FLSA "'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b) (1985). The FLSA's statute-of-limitations regime comports with our reading of the Act that the statute of limitations runs two or three years from when the wages first become due and payable. In fact, if we permitted the indefinite statute of limitations that Plaintiffs urge on us, the Act would revive time-barred FLSA claims since Plaintiffs' Colorado claims are directly tied to their claim to overtime under the

FLSA. Instead of bringing Colorado's laws "into compliance" with federal law, the state laws would be in direct tension with federal standards.

¶20 We thus hold that while terminated employees may include claims for previously earned wages under section 109, the right to bring those claims is subject to section 122's period of limitations, which runs from the date that the wages first became due and payable. That is, the period begins to run on the payday following the conclusion of the pay period in which the wages were earned—not on the day of termination.

## III. Conclusion

¶21 We conclude that under section 109, terminated employees may seek wages or compensation that had been earned in prior pay periods but remain unpaid at termination. This right, however, is subject to the statute of limitations in section 122, which runs from the date when the wages first became due and payable—the payday following the pay period in which they were earned. A terminated employee is thus limited to claims for the two (or three) years immediately preceding termination. Therefore, we answer the certified question from the District of Colorado in the negative, and return this case to that court for further proceedings.