488 P.3d 1140
Carmen NIETO, Petitioner,
v.CLARK'S MARKET, INC., Respondent.
Supreme Court Case No. 19SC553 Supreme Court of Colorado.
June 14, 2021
Attorneys for Petitioner: Albrechta & Albrechta, LLC, Eleni K. Albrechta, David T. Albrechta Durango, Colorado, Swain Law, LLC, Hunter A. Swain Denver, Colorado
Attorneys for Respondent: Bechtel Santo & Severn, Michael C. Santo, Grand Junction, Colorado
Attorneys for Amici Curiae Colorado Civil Justice League, Denver Metro Chamber of Commerce, and National Federation of Independent Business: Husch Blackwell LLP, Christopher L. Ottele, Stacey M. Bowman Denver, Colorado
Attorneys for Amicus Curiae Colorado Department of Labor and Employment, Division of Labor Standards and Statistics: Philip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney General, Denver, Colorado
Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association: Law Office of Susan R. Hahn LLC, Susan R. Hahn, Littleton, Colorado Law Office of David Lichtenstein, LLC, David Lichtenstein, Denver, Colorado Jester Gibson & Moore, LLP, Brian T. Moore, Rachel Tumin, Denver, Colorado
En Banc
JUSTICE HART delivered the Opinion of the Court.
¶1 In 2003, the General Assembly added subsection 8-4-101(14)(a)(III), C.R.S. (2020), of the Colorado Wage Claim Act ("CWCA") to expressly define "vacation pay" as a type of protected wages and compensation. Today, for the first time since its adoption, we address the meaning of subsection (14)(a)(III) and its relationship with other provisions of the CWCA head on.
¶2 When Clark's Market, Inc. ("CMI") terminated its longtime employee, Carmen Nieto, it declined to pay Nieto any of her accrued but unused vacation pay, citing its policy that an employee who is "discharged for any reason or do[es] not give proper notice ... will forfeit all earned vacation pay benefits." Nieto argues that CMI's policy requiring forfeiture of her earned vacation pay violates the CWCA.
¶3 We conclude that, although the CWCA does not entitle an employee to vacation pay, when an employer chooses to provide it, such pay is no less protected than other wages or compensation and, thus, cannot be forfeited once earned. Accordingly, under the CWCA, all vacation pay that is earned and determinable must be paid at the end of the employment relationship, see §§ 8-4-101(14)(a)(III), - 109(1)(a), C.R.S. (2020), and any term of an agreement that purports to forfeit earned vacation pay is void, see § 8-4-121, C.R.S. (2020). Because the court of appeals erred in concluding otherwise, we reverse.
I. Facts and Procedural History
¶4 Nieto worked at CMI for eight-and-a-half years until she was fired in March 2017. During that time, she earned vacation pay in accordance with the policy in CMI's employee handbook. According to Nieto, at the time of her termination, she had accumulated at least 136 hours of unused paid vacation, worth a total of $2,244.00.
¶5 Under CMI's policy, "vacation time is earned during the anniversary year previous to [when] it is actually taken," and the amount earned each year "is based on ... length of employment," as delineated in the policy. Additionally, the policy specifies that "[v]acation time cannot be carried over from year to year" and "must be taken in the twelve- (12) month period following the date it is earned."1 And, central to this appeal, the policy includes a clause forfeiting unused vacation pay upon separation:
In the event you voluntarily leave Clark's Market and give at least two (2) weeks written notice, you will receive vacation benefits earned as of your last anniversary date but not taken by the date of separation. ... If you are discharged for any reason or do not give proper notice, you will forfeit all earned vacation pay benefits.
¶6 In light of the forfeiture clause, CMI did not include Nieto's accrued but unused vacation pay in her final paycheck, and it refused her written demand for payment. See § 8-4-109(3). Nieto then sued CMI for withholding her vacation pay, asserting that subsection (14)(a)(III) required CMI to "pay upon separation from employment all vacation pay earned and determinable in accordance with the [employee handbook]" and that the forfeiture clause purporting to waive her right to such payment was void under section 8-4-121 of the CWCA.
¶7 CMI moved to dismiss Nieto's complaint under C.R.C.P. 12(b)(5) for failure to state a claim, and the district court granted the motion. The court reasoned that because the CWCA "clearly and unambiguously gives employers the right to enter into agreements with its employees regarding vacation pay," CMI's forfeiture clause was valid and Nieto was thus "not entitled to any accrued vacation pay."
¶8 Nieto appealed, and a division of the court of appeals affirmed. The division ultimately concluded that, because CMI fired Nieto, her vacation pay—despite being earned—had not "vested" under CMI's policy. See Nieto v. Clark's Market, Inc., 2019 COA 98, ¶ 17, ––– P.3d –––– ("Nieto's right to compensation for accrued but unused vacation pay depends on the parties' employment agreement. And that agreement unequivocally says that the vacation pay she seeks wasn't vested given the circumstances under which she left [CMI]'s employ.") (emphasis added). In reaching that conclusion, the division reasoned that the CWCA "creates [no] substantive right to payment for accrued but unused vacation time" and "merely ‘establishes minimal requirements concerning when and how agreed compensation must be paid.’ " Id. at ¶ 11 (quoting Barnes v. Van Schaack Mortg., 787 P.2d 207, 210 (Colo. App. 1990) ).
¶9 Nieto then petitioned for certiorari review, which we granted.2 II. Analysis
¶10 After summarizing the applicable law, we consider whether, as the division held, vacation pay that is earned and determinable must also have "vested" to be covered by the CWCA. Because we disagree that vacation pay is subject to a separate vesting requirement, we then consider whether forfeiture of earned vacation pay is otherwise permitted by the CWCA. Because we deem subsection (14)(a)(III) ambiguous in that respect, we turn to other evidence of legislative intent. We review the statutory language and structure, the CWCA's remedial purpose, the statute's legislative history, and the relevant agency interpretation to conclude that the CWCA prohibits forfeiture of earned vacation pay. Consequently, when an employer chooses to provide vacation pay to its employees, an employee is entitled to receive all that is earned but still unpaid upon separation from employment, and any agreement purporting to forfeit earned vacation pay is void. And because Nieto's complaint therefore should not have been dismissed, we reverse the judgment below and remand for further proceedings.
A. Applicable Law
1. Standard of Review and Principles of Statutory Interpretation ¶11 We review de novo whether the district court properly dismissed a complaint for failure to state a claim. Norton v. Rocky Mountain Planned Parenthood, Inc., 2018 CO 3, ¶ 7, 409 P.3d 331, 334. Like the district court, we must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. Id. In evaluating the sufficiency of the complaint, we may also consider any documents, such as CMI's employee handbook here, that are attached as exhibits or incorporated by reference. See id. ¶12 Questions of statutory interpretation are also subject to de novo review. Mook v. Bd. of Cnty. Comm'rs, 2020 CO 12, ¶ 24, 457 P.3d 568, 574. When interpreting a statute, our primary aim is to effectuate the legislature's intent. Bill Barrett Corp. v. Lembke, 2020 CO 73, ¶ 14, 474 P.3d 46, 49. To do so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." Id. (quoting Blooming Terrace No. 1, LLC v. KH Blake St., LLC, 2019 CO 58, ¶ 11, 444 P.3d 749, 752 ). "[W]e do not add words to or subtract words from a statute." People ex rel. Rein v. Meagher, 2020 CO 56, ¶ 22, 465 P.3d 554, 560. And where the plain language is unambiguous, we apply the statute as written. Delta Air Lines, Inc. v. Scholle, 2021 CO 20, ¶ 13, 484 P.3d 695, 699. ¶13 However, where a statute is ambiguous — that is, reasonably susceptible to more than one interpretation —we turn to other interpretive aids to discern the legislature's intent. Lewis v. Taylor, 2016 CO 48, ¶ 27, 375 P.3d 1205, 1210. Among these interpretive aids, we include the language and structure of the statute, any relevant legislative history, and any reasonable interpretation of the statute by an enforcing agency. See § 2-4-203, C.R.S. (2020); Gallion v. Colo. Dep't of Revenue, 171 P.3d 217, 221-22 (Colo. 2007).
2. The CWCA ¶14 The CWCA is a comprehensive statutory scheme designed to ensure the payment of employees' earned wages in a timely manner. Cagle v. Mathers Fam. Tr., 2013 CO 7, ¶ 36, 295 P.3d 460, 469. "Although the General Assembly has amended the [CWCA] periodically, its basic design has endured since its adoption in 1901." Leonard v. McMorris, 63 P.3d 323, 328 (Colo. 2003). Among other things, it requires that an employer shall: (1) pay its employees at regular intervals, § 8-4-103(1)(a), C.R.S. (2020); (2) not make a deduction from an employee's wages unless permitted by one of the statutory exceptions, § 8-4-105(1), C.R.S. (2020); and (3) pay, upon separation from employment, all earned but unpaid compensation within a prescribed timeframe, § 8-4-109. To effectuate these requirements, the CWCA imposes various penalties for employers' violations and offers multiple mechanisms for its enforcement. E.g., § 8-4-109(3)(b)-(c) (civil penalties and private right of action); § 8-4-111, C.R.S. (2020) (agency enforcement); § 8-4-113, C.R.S. (2020) (fines); § 8-4-114, C.R.S. (2020) (criminal penalties). Additionally, the CWCA nullifies any effort to circumvent its requirements by contract, providing that "any agreement ... by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void." § 8-4-121.
¶15 Before 2003, the CWCA did not specifically reference vacation pay as a form of wages or compensation. Instead, it referred only generally to "wages" and "compensation." § 8-4-101(9), C.R.S. (2002). In Hartman v. Freedman, 197 Colo. 275, 591 P.2d 1318, 1321 (1979), we held that vacation pay, when offered by an employer as "compensation for ... work," was protected under the statute. In 2003, the legislature made extensive changes to the CWCA. Among other changes, the amendments added a separate subsection defining "[b]onuses or commissions" as compensation, § 8-4-101(14)(a)(II), C.R.S. (2020), and subsection (14)(a)(III), codifying Hartman by explicitly requiring employers to pay vacation pay upon separation from employment:
"Wages" or "compensation" means:
....
(III) Vacation pay earned in accordance with the terms of any agreement. If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.
Ch. 286, sec. 1, § 8-4-101(8)(a)(III), 2003 Colo. Sess. Laws 1850, 1852 (currently codified at § 8-4-101(14)(a)(III) ).
¶16 We have since had only one occasion to construe subsection (14)(a)(III), in a context quite different from this one. In In re Marriage of Cardona and Castro, 2014 CO 3, ¶ 2, 316 P.3d 626, 628, we held that an enforceable interest in vacation pay accrued during a marriage constitutes marital property for purposes of the Uniform Dissolution of Marriage Act. In reaching that conclusion, we explained "that such accrued leave is, in effect, a debt due to the employee as part of the compensation the employee has earned for work already performed." Id. at ¶ 29, 316 P.3d at 634. Therefore, "[a]n employee who has accrued such leave has already earned an enforceable right to the remuneration, and later receives this compensation when the employee either uses the time for a permissible purpose or is paid the value of the accrued leave." Id.
¶17 Because our ultimate concern in Cardona was whether vacation pay should be treated as marital property, we did not reach the issue Nieto raises here: whether the CWCA allows forfeiture of earned vacation pay. And our resolution of that issue depends, in part, on the conditions that must be met for vacation pay to be covered by the CWCA. We turn now to that question.
B. The CWCA Applies to Earned and Determinable Vacation Pay
¶18 Subsection (14)(a)(III) requires, in relevant part, that an "employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the [employment] agreement." (Emphases added.) Because neither "earned" nor "determinable" is defined by the CWCA, we construe each term according to its common and ordinary meaning. See Mook, ¶ 24, 457 P.3d at 574 ; People v. Voth, 2013 CO 61, ¶ 23, 312 P.3d 144, 149 ("In determining the plain and ordinary meaning of words, courts may look to the dictionary for assistance."). Thus, on its face, subsection (14)(a)(III) applies to all vacation pay that, upon separation, (1) is owed "as return for ... work done or services rendered" by an employee, Merriam-Webster Dictionary, https://merriamwebster.com/dictionary/earn [https://perma.cc/DX4A-8H5Z]; accord Earn, Black's Law Dictionary (11th ed. 2019) ("To acquire by labor, service, or performance."); see Cardona, ¶ 29, 316 P.3d at 634 ; and (2) is "[a]ble to be determined or ascertained" pursuant to the terms of an agreement, Determinable , Black's Law Dictionary (11th ed. 2019); accord Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/determinable [https://perma.cc/4YBM-K8VN] ("capable of being determined, definitely ascertained, or decided upon"). ¶19 Both requirements are satisfied here. First, any vacation pay Nieto accrued prior to her termination was "for work [she] already performed" and, thus, "earned." Cardona, ¶ 29, 316 P.3d at 634 (citation omitted). Indeed, by the terms of the agreement, Nieto's vacation pay was earned. CMI's handbook explains that "vacation time is earned during the anniversary year previous to the twelve- (12) month period it is actually taken." (Emphasis added.) And the forfeiture clause provides that "[i]f you are discharged for any reason or do not give proper notice, you will forfeit all earned vacation pay benefits." (Emphasis added.) Second, at the time of her termination, Nieto's earned vacation pay was "capable of being determined" under the policy, which specifies the amount earned per year based on an employee's total years at CMI. It was therefore "determinable." As such, her vacation pay appears to be covered by the CWCA according to the plain language of subsection (14)(a)(III).
¶20 Yet the division below concluded, and CMI argues, that the CWCA does not apply because Nieto's vacation pay had not "vested" under CMI's policy at the time of her termination. In reaching this conclusion, the division concluded that "vested" (1) means something other than "earned and determinable" and, (2) notwithstanding its omission from subsection (14)(a)(III), applies to vacation pay in light of other general CWCA provisions that include the term. See Nieto, ¶¶ 8, 11, 17 (citing §§ 8-4-101(14)(a)(I), - 109(1)(a) ); see also § 8-4-101(14)(a)(I) (generally defining wages or compensation and providing, in relevant part, that "[n]o amount is considered to be wages or compensation until such amount is earned, vested , and determinable") (emphasis added); § 8-4-109(1)(a) (requiring that "wages or compensation for labor or service earned, vested, determinable, and unpaid" be paid immediately upon an employee's discharge) (emphasis added). ¶21 In interpreting a statute, we aim to give effect to every word and presume that the legislature did not use language idly. Young v. Brighton Sch. Dist. 27J, 2014 CO 32, ¶ 25, 325 P.3d 571, 579. But in this particular context, it is quite possible that "vested" is essentially a synonym of "earned." See, e.g., Barnes, 787 P.2d at 209 ("Under the [CWCA], compensation is earned if it is vested pursuant to an employment agreement at the time of an employee's termination.") (emphases added); Rohr v. Ted Neiters Motor Co., 758 P.2d 186, 188 (Colo. App. 1988) ("Rohr's bonus was earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for [multiple] months thereafter.") (emphases added); 19 Williston on Contracts § 54:35 (4th ed.) ("[A]n employee who has performed services required in an employment contract has a vested right to the compensation earned ....") (emphases added); see also Hartman, 591 P.2d at 1321 ("[V]acation pay —like wages —is both vested and determinable as of the date of termination."). ¶22 Moreover, even assuming that "vested" is distinct from "earned," we disagree that it applies to vacation pay. The legislature omitted the term "vested" in subsection (14)(a)(III), instead including only "earned and determinable." The division below disregarded that omission as a "questionable drafting choice[ ]," Nieto, ¶ 8 n.2, but we decline to do the same. It is "[j]ust as important as what the statute says is what the statute does not say." Mook, ¶ 35, 457 P.3d at 576 (alteration in original) (citation omitted). Indeed, where a term is used in some, but not all, analogous provisions of a statute, we presume that its omission from certain provisions was intentional. Well Augmentation Subdistrict v. City of Aurora, 221 P.3d 399, 419 (Colo. 2009) ; see, e.g., Rein, ¶ 31, 465 P.3d at 561 (rejecting that the word "willfully," which appeared in one subsection of a statute, could be imputed to other subsections lacking the term). This is especially the case where, as here, the analogous provisions were simultaneously amended or enacted. See 2003 Colo. Sess. Laws at 1852, 1856 (creating subsection (14)(a)(III) and adding "vested" to subsection (14)(a)(I) and section 8-4-109(1)(a)). ¶23 Further, when confronted with an irreconcilable conflict between multiple provisions of a statute, we must apply the most specific provision. See § 2-4-205, C.R.S. (2020); Mook, ¶ 75, 457 P.3d at 582. So to the extent it conflicts with the general definition of wages or compensation in subsection (14)(a)(I) and the payment provision in section 8-4-109(1)(a) referring to payment of vested wages, the specific vacation pay definition in subsection (14)(a)(III) controls. ¶24 For these reasons, we conclude that even if vested means something other than earned, its exclusion from subsection (14)(a)(III) signals that the legislature did not intend it to apply in this context.3 As such, we reject CMI's argument that Nieto's vacation pay —though earned —had not vested in light of the forfeiture clause and was thus beyond the scope of the CWCA's protection. Rather, we conclude that subsection (14)(a)(III) requires only that vacation pay be earned and determinable upon separation, and that both conditions were met here. We thus turn to whether CMI's forfeiture clause is permissible under the CWCA.
C. The CWCA Prohibits Forfeiture of Earned Vacation Pay
¶25 Having concluded that the CWCA applies to vacation pay that is earned and determinable, we now consider whether an employee can validly agree to forfeit such pay upon separation. Nieto argues that because subsection (14)(a)(III) entitles an employee to receive all vacation pay earned but unpaid at the end of the employment relationship, any term of an agreement purporting to waive or modify that right is void because of section 8-4-121's provision that "any agreement ... by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void." See also § 8-4-105(1) ("No employer shall make a deduction from the wages or compensation of an employee except as follows ...."). CMI counters that because the CWCA does not require employers to provide vacation pay, it is the employment agreement —not the CWCA —that determines whether vacation pay must be paid upon separation. Additionally, CMI argues that its forfeiture clause is valid because subsection (14)(a)(III) merely requires vacation pay to be paid upon separation "in accordance with the terms of any agreement between the employer and the employee."
¶26 Subsection (14)(a)(III) is at least somewhat susceptible to each of these interpretations, as forfeiture of vacation pay is not explicitly addressed by it or any other CWCA provisions. Accordingly, the statute is ambiguous in this respect, and we turn to other interpretive aids to discern the legislature's intent. Such interpretive aids include the statute's purpose, its language and structure, the legislative history, and the administrative interpretation of the agency charged with the statute's enforcement. See § 2-4-203 ; see, e.g., Diehl v. Weiser, 2019 CO 70, ¶¶ 13, 24, 444 P.3d 313, 317, 319.
1. Purpose ¶27 We have previously recognized that the CWCA's purpose is "to protect employees from exploitation, fraud[,] and oppression." Leonard, 63 P.3d at 328 (quoting Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486, 504 (Colo. 1989) (Mullarkey, J., concurring)); see, e.g., § 8-4-114(2) (imposing criminal penalties for an employer or its agent that willfully refuses to pay wages or falsely denies a wage claim "with intent to annoy, harass, oppress, hinder, coerce, delay, or defraud" the employee). As a remedial statute, it must "be liberally construed to carry out its purpose." Montemayor v. Jacor Commc'ns, Inc., 64 P.3d 916, 923 (Colo. App. 2002) ; accord Hartman v. Cmty. Resp. Ctr., Inc., 87 P.3d 202, 207 (Colo. App. 2003).
¶28 CMI's narrow interpretation of subsection (14)(a)(III) —as regulating only the timing of payment and effective only if an employer agrees to pay unused vacation pay upon separation— is contrary to the CWCA's remedial purpose. So is the notion that "in accordance with the terms of any agreement" was included to permit forfeiture clauses. Rejecting a similar argument in the context of bonuses, the U.S. District Court for the District of Colorado explained that "[a]dopting [the employer]'s argument would allow employers to manipulate similar contractual language to avoid paying rightful wages to employees by conveniently terminating them shortly before their payday, contravening the public policy behind the CWCA." Hallmon v. Advance Auto Parts, Inc., 921 F. Supp. 2d 1110, 1120 (D. Colo. 2013) ; see § 8-4-101(14)(a)(II) (defining, as wages or compensation, "[b]onuses or commissions earned for labor or services performed in accordance with ... any agreement"). That rationale applies with equal force here. In fact, though Nieto's complaint did not allege a particular reason for her termination, she posits that CMI might have terminated her merely to effect a forfeiture of her unused vacation pay, given the large amount she had accrued. That is precisely the kind of "exploitation, fraud[,] and oppression" of workers the CWCA was intended to prevent. Leonard, 63 P.3d at 328 (citation omitted).
¶29 Accordingly, we conclude that the CWCA's purpose supports Nieto's interpretation of subsection (14)(a)(III).
2. Language and Structure
¶30 Subsection (14)(a)(III) defines "vacation pay" as " ‘wages’ or ‘compensation’ " for purposes of the CWCA, and no other provision specifically refers to "vacation pay." Instead, the rest of the CWCA refers generally to "wages" or "compensation" only. This suggests that the legislature intended the CWCA's general protections of wages and compensation to apply equally to vacation pay, except as provided in subsection (14)(a)(III).
¶31 Subsection (14)(a)(III) includes three relevant distinctions. First, unlike minimum hourly wages, an employer is not obligated to provide paid vacation. See id. ("If an employer provides paid vacation for an employee ....") (emphasis added). Second, as previously noted, subsection (14)(a)(III) does not include the term "vested" in referring to the vacation pay that must be paid upon separation. Third, unlike the other provisions that define wages or compensation, see § 8-4-101(14)(a)(I)-(II), (IV), subsection (14)(a)(III) adds a substantive requirement: "If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee."
¶32 CMI claims that even where an employer provides paid vacation, the statute does not require it to be paid upon separation because that requirement can be overridden by a contractual provision due to the limiting language at the end of the sentence: "in accordance with the terms of any agreement between the employer and the employee." However, we conclude that a more plausible understanding of that limitation is that it qualifies "earned and determinable" rather than the requirement that an "employer shall pay" vacation pay. We reach this conclusion for at least two reasons. First, we have "consistently held that the use of the word ‘shall’ in a statute is usually deemed to involve a mandatory connotation." People v. Dist. Ct., 713 P.2d 918, 921 (Colo. 1986) ; see, e.g., Colo. State Bd. of Acct. v. Raisch, 931 P.2d 498, 500 (Colo. App. 1996) (declining to infer qualification of or exception to statute using the word "shall"). CMI's interpretation would essentially negate that mandatory connotation here, as well as contravene the legislature's manifest intent to prevent contractual waiver or modification of an employer's mandatory obligations under the CWCA. See § 8-4-121. Second, CMI's interpretation of the statutory language would render the entire provision meaningless. If an employer can require its employees to enter agreements forfeiting vacation pay at the end of the employment relationship, then the General Assembly's addition of subsection (14)(a)(III), requiring payment of earned vacation pay, would be completely meaningless.
¶33 For these reasons, we conclude that the statutory language and structure support Nieto's interpretation.
3. Legislative History
¶34 Nieto argues that committee hearing testimony related to the enactment of subsection (14)(a)(III) further supports her interpretation. See, e.g., Hearing on H.B. 1206 before the H. Bus. Comm., 64th Gen. Assemb., 1st Sess. (Mar. 20, 2003) (statements of Lorrie Ray, Mountain States Employers Council) ("There's nothing in the law that says you have to pay vacation pay, only that if you do offer it and you do have a policy for vacation, then you would have to pay it out as earnings. And that's what I'm trying to make clear. ... And then if [employers] fail to pay that vacation pay on termination, they are in violation of the Colorado Wage Claim Act."); Hearing on H.B. 1206 before the S. Bus. Comm., 64th Gen. Assemb., 1st Sess. (Apr. 23, 2003) (statement of Heidi Heltzel, Colorado Association of Commerce and Industry) ("[T]he employee is entitled to any earned vacation time upon termination."). While this testimony is not dispositive, we agree that it supports Nieto's interpretation. See People v. Rockwell, 125 P.3d 410, 419 (Colo. 2005) ("[T]estimony before a congressional committee helps illustrate the understanding of legislators," though it is "not conclusive proof of legislative intent.").
¶35 Additionally, Nieto and CMI both highlight that when debating House Bill 03-1206, the legislature considered—but declined to adopt—an amendment explicitly allowing forfeiture of earned vacation pay with sufficient notice to the employee:
An employer shall specifically notify an employee of any agreement between the employer and the employee that requires or results in loss or forfeiture of accrued vacation pay. An employer who does not provide such notification shall not subject such employee to any loss or forfeiture.
H.B. 1206, 64th Gen. Assemb., 1st Sess. (preamended). CMI argues, without specific support, that the legislature's rejection of this amendment was intended to unqualifiedly allow forfeiture of earned vacation pay — i.e., without requiring an employer to give notice to an employee. However, as Nieto points out, the only evidence of a reason for striking this proposed amendment was offered at the relevant committee hearing and is quite different from that suggested by CMI:
What this does is —there had been language put in here regarding whether employers could forfeit vacation pay, and through our discussions, the language had an unintended consequence. So we found it easier just to strike it and keep it very clear that the employee is entitled to any earned vacation time upon termination.
Hearing on H.B. 1206 before the S. Bus. Comm., 64th Gen. Assemb., 1st Sess. (Apr. 23, 2003) (statement of Heidi Heltzel, Colorado Association of Commerce and Industry) (emphasis added). And though such testimony is in no way "conclusive proof" of what was intended, it is nonetheless illustrative of the legislators' understanding of the effect of foregoing the amendment. Rockwell, 125 P.3d at 419.
¶36 Accordingly, to the extent it pertains to this issue, the legislative history supports Nieto's interpretation of subsection (14)(a)(III).
4. Agency Deference
¶37 After the court of appeals announced its opinion in this case, the agency tasked with enforcing the CWCA —the Colorado Department of Labor and Employment, Division of Labor Standards and Statistics ("CDLE") — promulgated a rule contradicting the division's holding. See Dep't of Lab. & Emp., 7 Colo. Code Regs. 1103-7:2, Rule 2.17 (2019) [hereinafter CDLE Rule 2.17]. Nieto argues that we should defer to that rule, citing National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). In Brand X , the U.S. Supreme Court held that, under federal law, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." Id. at 982, 125 S.Ct. 2688. In other words, the Court determined that the federal Administrative Procedure Act, 5 U.S.C. §§ 551 - 559 (2018), permits a federal agency to abrogate a court's prior interpretation of an ambiguous statute —i.e., do exactly what the CDLE attempted here. See Brand X, 545 U.S. at 982, 125 S.Ct. 2688. However, the CDLE is a state agency, and the Court's holding in Brand X is not binding as to parallel state administrative procedure statutes. We have not yet similarly interpreted the Colorado Administrative Procedure Act, and we decline Nieto's invitation to do so here.
¶38 Indeed, just as we decline to follow Brand X , we are unwilling to adopt a rigid approach to agency deference that would require courts to defer to a reasonable agency interpretation of an ambiguous statute even if a better interpretation is available. Cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (stating that, under the federal administrative law, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency"). True, we have, at times, appeared to embrace Chevron -style deference for purposes of the Colorado Administrative Procedure Act. See, e.g., N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct, 914 P.2d 902, 907 (Colo. 1996) ; Huber v. Kenna, 205 P.3d 1158, 1164 (Colo. 2009) (Martinez, J., concurring). But in other cases, we have made clear that, while agency interpretations should be given due consideration, they are "not binding on the court." El Paso Cnty. Bd. of Equalization v. Craddock, 850 P.2d 702, 704-05 (Colo. 1993) ; see BP Am. Prod. Co. v. Colo. Dep't of Revenue, 2016 CO 23, ¶ 15 n.5, 369 P.3d 281, 285 n.5 ; Ingram v. Cooper, 698 P.2d 1314, 1316 (Colo. 1985) ; see also Brunson v. Colo. Cab Co., LLC, 2018 COA 17, ¶ 12, 433 P.3d 93, 96 ("When a promulgating body provides an interpretation contained in other formats, such as opinion letters, internal agency guidelines, manuals or bulletins — all of which lack the force of law — such interpretations are ‘entitled to respect,’ but only to the extent that those interpretations have the ‘power to persuade.’ ") (citation omitted).
¶39 The CDLE interpretation of subsection (14)(a)(III) is in fact consistent with the statute's purpose, language, structure, and legislative history. Moreover, as the CDLE noted when adopting Rule 2.17, its hearing officers had interpreted the CWCA to prohibit forfeiture of vacation pay before the division's opinion below. See CDLE Rule 2.17 (collecting hearing officer decisions); see, e.g., In re Energy Smart Door Sys., No. 18-023, at 6 (CDLE Apr. 25, 2018) ("[A]n employer can no more require forfeiture of earned vacation wages upon separation than it could require forfeiture of earned hourly wages."); In re Excel Mech. Sys., No. 17-058, at 2-3 (CDLE July 10, 2017) ("[A] policy cannot deprive an employee of earned vacation time and/or wages that are associated with that earned vacation time."); see also Dep't of Lab. & Emp., Div. of Lab. Standards & Stat., Wage Protection Act of 2014 Frequently Asked Questions, at 4-5, https://www.colorado.gov/pacific/sites/default/files/WPA%20FAQs%208-16-16.pdf [https://perma.cc/3HN4-R3MK] (last updated Aug. 2016) (nonbinding guidance replaced by Rule 2.17). We therefore consider this agency interpretation further persuasive evidence that Nieto's understanding of subsection (14)(a)(III) is the correct one. ¶40 For these reasons, we conclude that the CWCA prohibits forfeiture of earned vacation pay. Accordingly, if an employer chooses to provide vacation pay, any contract term that purports to forfeit it —like CMI's forfeiture clause here —is void under section 8-4-121. III. Attorneys' Fees
¶41 Nieto requests her attorneys' fees incurred in this appeal. We decline to award her attorneys' fees pursuant to C.A.R. 39.1. However, we recognize that Nieto may be able to recover such fees if she ultimately prevails in the district court, and we leave that question for consideration in that forum. See § 8-4-110(1), C.R.S. (2020); Graham v. Zurich Am. Ins. Co., 2012 COA 188, ¶¶ 27-29, 296 P.3d 347, 352.
IV. Conclusion
¶42 Although the CWCA does not create an automatic right to vacation pay, when an employer chooses to provide such pay, it cannot be forfeited once earned by the employee. The provisions of CMI's employee handbook purporting to forfeit Nieto's earned but unused vacation pay are therefore void under section 8-4-121. Because Nieto's complaint thus stated a viable claim for relief and should not have been dismissed, we reverse the division's judgment and remand for further proceedings consistent with this opinion.
1 In light of these "use-it-or-lose-it" provisions, and because Nieto earned only three weeks — presumably 120 hours — of paid vacation at her last accrual under the policy, CMI argues that she could not have accrued 136 hours at the time of her termination. However, Nieto claims she copied that figure directly from her final paystub, which is not in the record before us.
2 We granted certiorari to resolve the following issue:
Whether section 8-4-101(14)(a)(III) of the Colorado Wage Claim Act allows an employment agreement to forfeit an employee's accrued but unused vacation pay upon separation of employment.
3 We are unpersuaded that Hernandez v. Ray Domenico Farms, Inc., 2018 CO 15, 414 P.3d 700, and principles of stare decisis require us to conclude otherwise. In Hernandez , we were asked to resolve whether wages that should have been paid during the employment relationship can be recovered in an action filed after the employee's termination and, if so, when the statute of limitations applicable to such a claim begins to run. Id. at ¶ 1, 414 P.3d at 701. In concluding that the CWCA's post-termination recovery mechanism applies to all unpaid wages —not just those exempted from section 8-4-103's requirement of payment in regular intervals —we explained:
Under the [CWCA]'s plain language, a terminated employee is entitled to receive "all amounts for labor or service performed," § 8-4-101(14)(a), which are "earned, vested, determinable, and unpaid at the time of discharge," § 8-4-109(1)(a). This may include wages of the sort that are due and payable regularly throughout the time of employment and also some types of compensation — like vacation pay, § 8-4-101(14)(a)(III) —that are payable only at separation.
Id. at ¶ 9, 414 P.3d at 703 (emphases added). Based on this statement, the division below concluded that, in Hernandez , we "appl[ied] this limitation to vacation pay under subsection (14)(a)(III)," Nieto, ¶ 8 (citing Hernandez, ¶ 9, 414 P.3d at 703 ), and CMI now argues the same. We disagree. Our decision in Hernandez had nothing to do with vacation pay or subsection (14)(a)(III). It requires a strained reading of both Hernandez and section 8-4-109 to conclude that either imports a vesting requirement into a statutory provision that explicitly excludes any such requirement.